1. The case of Hernandez v. Sun Mut. Ins. Co. [Case No. 6,415], affirmed.

tially damaged, and there was a physical total loss and destruction of the remaining 2,024 boxes, in consequence of the breaking up and destruction of the vessel before they could be got out. The fact of the subsequent insurance made by the Sun Mutual Insurance Company on said 6,000 boxes of lemons, and on 4,000 boxes of raisins, as set forth in the report of the case against the latter company, was proved at the trial. The insured value of the 2,024 boxes of lemons which were lost, amounted to $8,602, in gold, and the proportion thereof payable by the defendants, if they were liable for such loss, was $3,778.13, in gold. At the trial, a verdict was taken, by consent, for the plaintiffs, for $5,318.89, being the amount of the said $3,778.13, in currency, and with interest thereon to the date of the trial, subject to the opinion of the court, on a case.

---

## Case No. 6,415.

HERNANDEZ et al. v. SUN MUT. INS. CO.

[6 Blatchf. 317; [1] 11 Leg. & Ins. Rep. 108.]

Circuit Court, S. D. New York. March 19, 1869.

MARINE INSURANCE — INTERPRETATION OF POLICY —WRITTEN WORDS AND PRINTED ONES.

1. In this case, which was a suit on a policy of marine insurance on boxes of lemons, a valu-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ation of the lemons, by the policy, at so much per box, was *held* not to make the insurance an insurance on each box of the lemons, when it was otherwise a single contract of insurance on the entire number of boxes of lemons named in the policy, and not an insurance against the loss of any portion of the boxes less than the whole.

[Cited in Hernandez v. New York Mut. Ins. Co., Case No. 6,414; Neidlinger v. Insurance Co. of North America, Id. 10,086; New York Cent. & H. R. R. Co. v. British & Foreign Marine Ins. Co., 58 Fed. 918.]

[Cited in Haenschen v. Franklin Ins. Co., 67 Mo. 160.]

2. The case of Newlin v. Insurance Co., 20 Pa. St. 312, cited and approved.

3. All the words of a policy, the written ones and the printed ones, must be taken together, and, where there is a contradiction between them, the former must control.

4. The printed words of a policy, insuring against loss of the goods insured, "or any part thereof," commented on. Those printed words do not control the printed words in the memorandum clause, "free from average, unless general."

[Cited in Pearse v. Quebec S. S. Co., 24 Fed. 287.]

This was an action on a policy of marine insurance, made by the defendants, October 10th, 1867, insuring for the plaintiffs [Francisco Hernandez and Juan Pedro Hernandez] in the written words of the policy, "fourteen thousand three hundred dollars on 6,000 boxes lemons, free of particular average, but liable for loss of part by jettison—thirty-eight hundred dollars on 4,000 boxes raisins, subject to ten (10) per cent. average"—by the steamer Amsterdam, from Malaga to New York. The policy also contained, in writing, the words, "raisins valued at 1.90c. per box, in wholes; halves, and quarter boxes in proportion; lemons at $4.25, gold, per box." The premium was stated in writing in the policy, as follows: "one and one-fourth per cent. on lemons; one and one-half per cent. on raisins; less fifteen per cent. in lieu of scrip." The policy also contained the written words: "$18,100, eighteen thousand one hundred dollars, gold," and the written words, "premium payable in gold." It also contained the printed words, "loss, if any, to be paid in gold;" and, after the written descriptive clause and the written valuation clause, above quoted, printed words to the effect that the insurance was against perils to the damage "of the said goods and merchandise, or any part thereof;" and, after the said two written clauses, and the written premium clause, above quoted, the printed words, "but no partial loss or particular average, shall, in any case, be paid, unless amounting to five per cent.; provided always, and it is hereby further agreed, that if the said assured shall have made any other assurance upon the premises aforesaid, prior in date to this policy, then the said Sun Mutual Insurance Company shall be answerable only for so much as the amount of such prior assurance may be deficient towards fully covering the premises hereby assured, and the said Sun Mutual Insurance Company shall return the premium upon so much of the sum

by them assured as they shall be, by such prior assurance, exonerated from." The printed memorandum clause in the policy contained these words: "It is also agreed that * * * fruits (whether preserved or otherwise) * * * are warranted by the assured free from average, unless general." On the back of this policy were endorsed, in writing, these words: "October 7th, 1867. Thirteen hundred and sixty dollars, gold, on almonds, and ten hundred and sixty-two dollars, gold, on lemons, valued at sum insured, per steamer Amsterdam, at and from Malaga to New York. Almonds subject to ten (10) per cent. average. Lemons free of particular average; otherwise, conditions as within. Loss payable to them. On 170 bales almonds, $1,360, valued at $8, gold, per package. On 250 boxes lemons, $1,062, valued at $4.25, gold, per box. One and one-half per cent. less 15 per cent., in lieu of scrip. $2,422, twenty-four hundred and twenty-two dollars, at 1½ per cent., $36.33. Premium payable in gold." On the 13th of September, 1867, the plaintiffs shipped on board of the steamer Amsterdam, at Malaga, for New York, 6,250 boxes of lemons, 6,000 of them being those named in the body of the policy, and 250 of them being those named in the endorsement. The steamer sailed from Malaga on the 22d of September, 1867, and, on the 20th of October, 1867, while on her voyage to New York, she was stranded and totally lost, near Montauk Point, Long Island. Of the 6,250 boxes of lemons insured, 4,071 were saved and delivered in a sound condition, except that a small portion thereof were partially damaged; and there was a physical loss and destruction of the remaining 2,179 boxes, (namely, 2,024 of the 6,000 insured by the body of the policy, and 155 of the 250 insured by the endorsement,) in consequence of the breaking up and destruction of the steamer before they could be got out. The plaintiffs had an insurance on the said 6,000 boxes of lemons, and on the said 4,000 boxes of raisins, in the New York Mutual Insurance Company, which was effected on the 27th of September, 1867, as follows: "$2,800 on 4,000 boxes raisins, in wholes, ½s and qrs., vald. a. 1.90c. ea., $7,600—$11,200 on 6,000 boxes of lemons, a. $4.25 ea., $25,500. Gold. Raisins subject to 10 per cent. average. Lemons free of particular average, but liable for any portion thrown overboard." The insured value of the 2,179 boxes which were lost amounted to $9,260.75 in gold, and the proportion thereof payable by the defendants, if they were liable for such loss, was $5,482.62, in gold. Evidence of the foregoing facts being given at the trial, a verdict was taken, by consent, for the plaintiffs, for $7,736.19, being the amount of the said $5,482.62, in currency, and with interest thereon to the date of the trial, subject to the opinion of the court on a case.

Edward H. Owen and Stephen P. Nash, for plaintiffs.

Joseph H. Choate, for defendants.

BLATCHFORD, District Judge. No claim is made in this suit as to the raisins. The sole question is as to the 2,179 boxes of lemons. It is contended, on the part of the plaintiffs, that the body of the policy is not a single contract of insurance on 6,000 boxes of lemons, and that the endorsement is not a single contract of insurance on 250 boxes of lemons, but that the body of the policy contains a separate insurance on each box of the 6,000 boxes named in it, and that the endorsement contains a separate insurance on each box of the 250 boxes named in it. Under the printed memorandum clause in the policy, these lemons, being fruits, and being warranted by the assured, by such clause, free from average, unless general, if the 6,000 boxes were insured in gross by the body of the policy, and the 250 boxes were insured in gross by the endorsement, the defendants would not be liable for the two several lots of 2,024 boxes and 155 boxes, physically totally lost, others of each of the two lots having been saved. But the plaintiffs rely on the written portions of the policy and of the endorsement, to take the case out of the general rule of law, and to show that the insurance was not of the 6,000 boxes in gross, and of the 250 boxes in gross. So much of the written portion of the body of the policy as describes the subject insured, and the amount of risk taken, states nothing except that $14,300 is insured on 6,000 boxes of lemons, with the words added, "free of particular average, but liable for loss of part by jettison." So much of the written portion of the endorsement as describes the subject insured, and the amount of risk taken, states nothing except that $1,062 is insured on 250 boxes of lemons, with the words added, "free of particular average; otherwise, conditions as within." These insurances can mean only, that 6,000 boxes of lemons are insured in one lot, and 250 boxes of lemons are insured in another lot, each lot free of particular average, except that if any part of either lot, that is, any number of boxes in either lot, is lost by jettison, the insurer is to be liable therefor. The words "free of particular average," written in, in both the body of the policy and the endorsement, as to the lemons, mean the same thing, and are to the same effect as the words "free from average, unless general," in the printed memorandum clause, in regard to the lemons, as fruits, and import that the contract is, that the insurer is to be liable for no loss of any part of the 6,000 boxes less than the whole, or any part of the 250 boxes less than the whole. It is specially provided, however, that the insurer shall be liable for a loss by jettison of a less number of the 6,000 boxes than the whole, and of a less number of the 250 boxes than the whole. But for such special provision, the words, "free of particular average," would apply as well to a loss by jettison as to any other loss. Thus far, then, there would seem to be no room for controversy as to the terms of the contract, and

nothing to indicate an intention, by either party, to have an insurance made on any portion of the 6,000 boxes less than the whole, or any portion of the 250 boxes less than the whole, in regard to any loss, except a loss by jettison.

What, then, is there in any other part of the contract to indicate any different intention? The clause solely relied on by the plaintiffs, to show such different intention, is the written valuation clause, in the body of the policy, and also in the endorsement, valuing the lemons at $4.25 per box. They claim that such valuation clause indicates that the insurance was distributive, and on each box of lemons, while they do not contend that the fact that the lemons were contained in separate boxes, was alone sufficient to create a separate insurance on each box. Reasoning on principle, it would hardly answer to admit the valuation of each box in this case as conclusive evidence of an intention to insure each box separately; and that is what must be done if the claim of the plaintiffs is allowed. Other reasons occur why a valuation of each box of lemons, as well as a valuation of each box, each half box, and each quarter box of raisins, and of each bale of almonds, may have been inserted. The property was shipped on the 13th of September, at Malaga, the vessel sailed from Malaga on the 22d of September, and the insurances were effected on the 7th and 10th of October. The valuation of each separate package may very well have been inserted with a view to calculating the return premium in case it should turn out that less than 6,250 boxes of lemons, or less than the specified number of packages of raisins and almonds, had been shipped, or the return premium provided for in case of the existence of a prior insurance on the property, and which prior insurance, as appears from the evidence, in fact existed in this case. So, also, in case of a loss by jettison of some of the boxes of lemons, the valuation of each box of lemons was important, to fix the measure of the insurer's liability. The valuation did not correspond with the sum insured, as to the body of the policy, in respect to either of the articles insured; and, therefore, the valuation, per box, of the lemons and the raisins insured by the body of the policy, could not be arrived at by dividing the sum insured by the total number of boxes. The valuation of the 6,000 boxes of lemons, at $4.25 per box, was $25,500, while the sum insured thereon was $14,300; and, if the sum so insured had been taken as the valuation, in the absence of the valuation at $4.25 per box, it would have given a valuation of $2.38 per box. The valuation of the 4,000 boxes of raisins, at $1.90 per box, was $7,600 while the sum insured thereon was $3,800, which sum, if taken as the valuation, would, in the absence of the valuation at $1.90 per box, have given a valuation of 95 cents per box.

Moreover, the view urged on the part of the plaintiffs, leads to some results which it is impossible to believe could have been contemplated by the parties. The insurance, if distributive, and on each package, must have been made on each quarter box of raisins; that is, on each forty-seven and a half cents' worth of raisins. The insurance on the raisins is made "subject to ten per cent. average." By that, the insurer was not liable for any partial loss of any quantum of raisins insured, unless such loss should amount to ten per cent. of the value of such quantum, but the insurer was to be liable for such partial loss, if it should amount to such ten per cent. Now, if forty-seven and a half cents' worth of raisins was separately insured the insurer was made liable for a loss amounting to as little as four cents and three-quarters. With a printed memorandum clause such as is found in this policy, it requires clear and definite language to make a contract which shall take these fruits so wholly out of that clause, and out of the freedom from particular average therein stipulated, as to require a separate average on each one of a quantity of small packages, each valued at not more than forty-seven and a half cents. In regard to a loss of lemons by jettison, where the entire package would be thrown overboard, and presumably lost as a totality, the contract is clear; and the expression of a liability for a loss of part by jettison, excludes the idea that the insurer was to be liable for a loss of part by any other peril, especially in connection with the written clause, "free of particular average," and the like clause in the printed memorandum, in regard to the lemons.

Again, if each box of lemons was separately insured, there would necessarily be a liability of the insurer for each box jettisoned, without the insertion of the written clause, "but liable for loss of part by jettison." Such words would, in that case, be wholly useless; unless, indeed, each box being insured, the jettison of a part means the throwing overboard of some lemons out of a box—a construction hardly worthy of being advanced in a court of justice.

By the policy, the premiums on the lemons and the raisins severally would seem to have been adjusted with reference to the risk taken. The premium is 1¼ per cent. on lemons, and 1½ per cent. on raisins, both being fruits, and both in boxes. Thus a higher premium was charged on raisins. This was natural, on the view urged by the defendants. They insured the lemons, free from particular average, or partial loss, except that they were to pay for the loss of part by jettison; but, in regard to the raisins they were to pay for a partial loss, provided it amounted to ten per cent. of the value of the raisins insured. This warranted a higher premium on the raisins, the risk being greater. On the view urged by the plaintiffs, however, the risk as to the lemons would be greater than the risk as to the raisins; for, while each box of each article would be insured separately, the raisins would be subject to ten per cent. average, while the lemons would not be, and yet the raisins would have paid one-quarter of one per cent. more premium.

The case of Newlin v. Insurance Co., 20 Pa. St. 312, is directly in point against the plaintiffs, and no case directly in their favor has been referred to. On principle, the reasoning of the supreme court of Pennsylvania, in that case, is sound, and shows that such a valuation as is found in the policy in this case, cannot be construed as creating a separate insurance on each package so valued. in view of the language of the other portions of the policy. I have no doubt that this is the view generally held by assurers and assured, in practical business, and acted on daily, and it is so far a rule of property, that I am not willing to disturb it until so directed by superior authority.

The fact urged, that the printed portion of the policy insures against loss "of the said goods and merchandise, or any part thereof," cannot control the case. The whole policy, written words and printed words, must be taken together; and, where there is a contradiction between the written words and the printed words, the former must control. 2 Pars. Mar. Law, bk. 2, p. 53, c. 1. It is the settled law of this court, under a policy like the present one, containing, respecting the lemons, the printed words, in the memorandum clause, "free from average, unless general," and also the written words, "free of particular average," that the insurer is free from all partial losses of every kind, which do not arise from a contribution towards a general average. Biays v. Chesapeake Ins. Co., 7 Cranch [11 U. S.] 415; Morean v. U. S. Ins. Co., 1 Wheat. [14 U. S.] 219. Yet, the claim on the part of the plaintiffs is, that by the printed words, "or any part thereof," the insurer is made liable for all partial losses of every kind. This is wholly contradictory of the written words as to the lemons, "free of particular average," and the latter must control. These words, "or any part thereof," are equally applicable, if capable of the construction insisted on by the plaintiffs, to the insurance, which they insist was made, of each separate box of the lemons; and then these words would effect an insurance of each separate lemon, which the plaintiffs would hardly contend for. These words, "or any part thereof," in the printed blank form of a marine policy, have coexisted, for a long time, with the printed words in the memorandum clause, "free from average, unless general,"—1 Arn. Ins. (2d Ed. by Perkins) p. 21,—and yet it has never been supposed that the former control the latter. Under the rule as to the construction of contracts, that, where one portion of a contract is wholly repugnant to the

rest of it, and is irreconcilable with the manifest intention of the parties, as apparent upon a consideration of the whole instrument, it will be stricken out, (Story, Cont. c. 20, § 660,) the former words would, in the present policy, be stricken out. It was said by Chief Justice Marshall, in Yeaton v. Fry, 5 Cranch [9 U. S.] 335, 342, in regard to policies of marine insurance, that they "are generally the most informal instruments which are brought into courts of justice;" and in regard to a marine policy, he also said, in Maryland Ins. Co. v. Woods, 6 Cranch [10 U. S.] 29, 45: "The contract of insurance is certainly very loosely drawn and a settled construction different from the natural import of the words, is given, by the commercial world, to many of its stipulations, which construction has been sanctioned by the decisions of courts." The remark of Mr. Justice Buller, made in 1791, in Brough v. Whitmore, 4 Term R. 206, 210, in regard to a policy of insurance, that it "has at all times been considered in courts of law, as an absurd and incoherent instrument, but it is founded on usage, and must be governed and construed by usage," is as true now as it was then. It cannot be seriously contended, that any such construction is given, by the commercial world, or by assurers or assured, or in usage, or by courts of justice, to these ancient, formal, printed words, "or any part thereof," as is contended for by the plaintiffs. There must be a judgment for the defendants.

[See Case No. 6,414.]