PEARSE *v.* QUEBEC STEAM-SHIP CO.[1]

*(District Court, S. D. New York.* June 10, 1885.)

1. DAMAGE TO CARGO — PARTIAL LOSS — SUBROGATION OF INSURERS WITHOUT ABANDONMENT.

This suit arose out of damage to cargo on board the steamer Hadji in 1880. See *The Hadji,* 16 FED. REP. 861; affirmed 20 FED. REP. 876. Libelant was the assignee of insurers, who, having paid a partial loss, claimed to be subrogated to the rights of the owners. Respondent objected that there was no subrogation because no abandonment; and hence no title. *Held,* (following *The Frank G. Fowler,* 8 FED. REP. 360,) that the objection should be overruled.

2. SAME—VOLUNTARY PAYMENT BY INSURER — RIGHT OF CARRIER TO QUESTION PAYMENT.

As it was held in the case of *The Hadji, supra,* that the ship was unseaworthy, respondent contended that the payment by the insurer was voluntary, and therefore that the assignee was not entitled to recover in this action. *Held,* that a carrier who is liable for loss or injury is not entitled to raise that question as between insurer and insured, after the insurer has paid the loss.

3. BILL OF LADING—CONSTRUCTION OF EXEMPTION CLAUSE—"SHIP-OWNERS WILL NOT BE LIABLE FOR MORE THAN INVOICE VALUE."

The bill of lading was for 14 bales, three of which were damaged. It contained the clause that "in case of damage, loss, or non-delivery, the ship-owners will not be liable for more than the invoice value of the goods." The invoice value of the 14 bales was $2,692.16; the price obtained for the whole in the foreign market was $2,901.85. The invoice value of the damaged goods alone was $571.05; the actual price received for them was $184.85. Respondent relied on the analogy of insurance policies, and the rule that where such policy contains the clause "free from average, unless general," under a certain per cent., the percentage of loss is calculated upon the subject insured as a whole, and that there can be no recovery for loss of a part less than the agreed percentage calculated on the whole. Respondent contended, therefore, that as the shipper realized on the whole cargo more than the invoice value, he could not recover the loss on the three packages. *Held,* that the liability of a common carrier is not simply on contract, like the liability of an insurance company, but in tort as well, and arises separately for each item of loss. That the above clause in the bill of lading should be construed according to its natural import and evident intention, not as a *condition* of any liability at all, but as a limitation of the extent of the carrier's liability, and as applying distributively upon each article damaged; and that he is to be held liable, in the sense of being accountable, for no more than the invoice value of the goods damaged. For the same

[1]Reported by R. D. & Edward G. Benedict, Esqs., of the New York bar.

reason, also, *held*, that on a partial injury the damage is to be computed on the basis of the invoice value of the goods damaged, and their net proceeds being credited against their invoice price and freight, the carrier is to be held for the difference only.

In Admiralty.

*Sidney Chubb*, for libelant.

*Butler, Stillman & Hubbard* and *Wm. Mynderse*, for respondent.

BROWN, J. The claim of the libelant in this case arises upon the same facts stated in the case of *The Hadji*, 16 FED. REP. 861. That case, having been affirmed on appeal, (20 FED. REP. 876,) is conclusive in this court as respects the respondent's liability for the loss. The bill of lading here is also the same as in the former case. It provides that "in case of damage, loss, or non-delivery, the ship-owners will not be liable for more than the invoice value of the goods."

1. The libelant claims under an assignment from the insurers, who paid the owner for the loss; and the insurers' title rests upon subrogation only to the rights of the owner. As the loss was but partial, there was no abandonment of the goods to the insurers; and it is objected that the libelant's title is not made out, because there is no subrogation, as it is contended, except upon an abandonment. This point was considered by my predecessor, CHOATE, J., in the case of *The Frank G. Fowler*, 8 FED. REP. 360, 364, and overruled.

2. A further objection is made that, under the ruling in the case of *The Hadji*, the insurers were not liable at all; because the defects in the ship that gave rise to the injury were there held to render the ship unseaworthy for her voyage; and that the insurers' payment of the loss was therefore a voluntary payment, and that their assignee is therefore not entitled to recover anything in this action. It has been repeatedly held, however, that a carrier who is liable for the loss or injury is not entitled to raise that question as between the insurer and the insured after the insurers have paid the loss. *The Sidney*, 23 FED. REP. 88, 96, and cases there cited; *Sun Mutual Ins. Co.* v. *Mississippi Valley Transp. Co.* 17 FED. REP. 919.

3. The principal question raised is in regard to the amount, if anything, recoverable under the limiting clause of the bill of lading. The bill of lading recites the shipment of 14 bales of goods: three were delivered damaged, and 11 were delivered uninjured, at the port of destination. The goods were invoiced at five cents per yard; their value at the place of delivery was six and one-half cents a yard. The three damaged bales upon sale there netted $184.85. Their invoice value was $571.05. Their value at St. Thomas, if sound, would have been $742.36. The adventure as a whole stands as follows:

| | | |
|---|---|---|
| 14 Bales, invoice value | $2,660 00 | |
| Freight | 32 16 | |
| Total | | $2,692 16 |
| 11 Bales at 6½ cents per yard | $2,717 00 | |
| Three Damaged Bales, net | 184 85 | |
| Total | | $2,901 85 |

The respondents contend that the stipulation of the bill of lading should be construed as limiting their responsibility to the invoice value of the shipment as a whole; and that the carriers are not to be liable for any loss or damage, provided the shipper ultimately realizes at the port of destination the whole invoice value. Upon that theory the respondents in this case would not be liable at all, because the owner has realized upon the whole shipment considerably more than the invoice value of the whole, notwithstanding the damage to three of the fourteen bales. In support of this contention, the analogy of insurance policies is adduced, and the construction adopted of the memorandum clause that insurance policies usually contain, warranting the goods "free from average, unless general," under a certain per cent. In such cases, it has long been the established law of this country, and it is now the law of England, although for some 50 years, until comparatively recently, the opposite construction there prevailed, that the percentage of loss excepted in the memorandum clause is to be computed upon the subject insured as a whole, and not upon its separate parts, such as cases, packages, or hogsheads; unless the insurance be clearly declared to be made upon each package or case separately. Under this rule, if a hundred boxes of oranges were insured "free from average, unless general," or "free from average under 5 per cent.," and four of the hundred boxes were wholly lost by a sea peril, the remaining 96 being uninjured, no recovery could be had of the insurers for the total loss of the four boxes. *Guerlain* v. *Columbian Ins. Co.* 7 Johns. 527; *Wadsworth* v. *Pacific Ins. Co.* 4 Wend. 33; *Biays* v. *Chesapeake Ins. Co.* 7 Cranch, 415; *Morean* v. *U. S. Ins. Co.* 1 Wheat. 219; *Ralli* v. *Janson*, 6 El. & Bl. 422; *Entwisle* v. *Ellis*, 2 Hurl. & N. 549; *Newlin* v. *Insurance Co.* 20 Pa. St. 312; *Hernandez* v. *Sun Mutual Ins. Co.* 6 Blatchf. 317; 2 Arn. Ins. 865; 2 Phil. Ins. 505; Marsh. Ins. 173.

The above rule in insurance cases is founded upon the nature of the insurance contract, which, unless the contrary appear, is an insurance of the cargo as a whole, and not a separate insurance upon each article. *Humphrey* v. *Union Ins. Co.* 3 Mason, 429, 442. The memorandum clause is a *condition* of the contract that excludes partial loss, or a partial loss under a certain percentage, and the computation of the percentage therefore follows the nature of the insurance contract; that is, upon the goods insured as an aggregate. The liability of a common carrier for goods lost by negligence is not a liability upon contract only, but in tort also. The liability arises separately for each item of loss. The limiting clause in this bill of lading is not a condition of the existence of any liability at all on the part of the carrier; it is a mere limitation of the extent of his liability. It must be applied, therefore, according to the nature of the liability itself; that is, distributively, upon each article lost or damaged, for which the carrier is accountable. As a limitation, this court held it valid in the case of *The Hadji*, 18 Fed. Rep. 459; and a similar decision upon the

same clause has been also made by Judge NIXON in the case of *The Lydian Monarch*, 23 FED. REP. 298. The principle of these decisions, so far as they uphold the carrier's right to limit his liability to some certain value, has been also recently affirmed by the supreme court in the case of *Hart* v. *Pennsylvania R. Co.* 112 U. S. 331; S. C. 5 Sup. Ct. Rep. 151; although the present question did not arise in that case, because the limitation was upon each item separately.

The limiting clause in this case must be construed as applying distributively upon each article damaged, because that is the most natural meaning of the words, and that best accords with the presumed intention of the parties. The clear intent was to provide not merely for the loss of the whole shipment, or for damage to the whole shipment, but for the loss of any part, and for damage to any part. When it is stipulated that in case of damage or loss, the ship-owner "will not be liable for more than the invoice value of the goods," the goods referred to are plainly the goods damaged, and those only; otherwise the clause would not be valid. The law makes the carrier liable for the loss or damage of *any* goods through his own negligence. Any stipulation that would annul this liability is void. If the carrier should be allowed, in ascertaining the amount for which he was liable, to charge against the invoice price of the whole the amount realized in a foreign market for the whole cargo, damaged and undamaged, that construction would be giving to the carrier the full benefit of the foreign market value, which is expressly denied to the shipper,—a result not presumably within the intention of the parties, and at variance with one of the reasons for upholding the clause in question, namely, the fixity and certainty it affords for the computation of damages.

If the construction contended for by the claimants were the proper meaning of this limiting clause, it would be void upon grounds of public policy, as unreasonable, and as affording a direct encouragement to the theft or non-delivery of the shipper's goods; for on every shipment, whether there was a loss or not, the carrier might, without accountability, appropriate to his own use enough of the owner's goods to reduce the aggregate value of what remained in the foreign market to the invoice value of the whole,—a result destructive of all commerce, because enabling the carrier to appropriate all its profits. A totally opposite construction of the clause, which, in my judgment, is equally at variance with its intention, would make it applicable only where the actual damage amounted to the invoice value; leaving the carrier to pay any amount of damage, estimated according to the foreign market value, which should be less than the invoice value of the goods damaged. The words of the clause, however, are not that the owners will not be liable to pay more *damage* than the invoice value of the goods; but that they will not be *liable* for more than the invoice value of the goods, *i. e.*, of the goods damaged. The true meaning

of the language, as well as the true intention, is, that the carrier is not to be *liable*, in the sense of being *accountable* or *responsible*, for more than the invoice value of the goods damaged or lost. Where there is a partial injury, therefore, the damage is to be computed upon the basis of the invoice value of the goods damaged, because the invoice value is the extent of the value for which the carrier assumes responsibility. Whatever is realized for the damaged goods must therefore be credited upon the invoice value, the same as though the goods were abandoned to the carrier, and the sale of the damaged goods were made by him. In that case he would pay the invoice value, and would receive the proceeds of the damaged goods.

It is immaterial by whom the sale of the damaged goods is effected: whether by the carrier or by the owner. The carrier's *responsibility* is for the whole invoice value of the goods damaged, and no more; and the net proceeds of the sale of the damaged goods, over all charges and expenses, if received by the owner, must therefore go in diminution of the invoice price and freight, and the carrier must pay the difference. Such, in effect, was the judgment of the court in the case of *The Lydian Monarch, supra,* in which it was said, (page 300:) "If it should turn out that the libelant has received from the sale of the damaged goods the invoice price, after deducting the costs of importation, sale, etc., the libel will be dismissed."

Such seems to me to be clearly the proper interpretation of this clause. Thus construed, I can perceive no reasonable objections to its validity. In effect, it only applies to damaged goods carried to the port of destination the same rule that has been long applied in courts of admiralty to the loss of goods at sea through collision; namely, that the value at the port of shipment, and not at the port of destination, shall control. *The Scotland,* 105 U. S. 24, 25; *The City of New York,* 23 FED. REP. 616, 619. The result is that the libelant is entitled to $386.20, the difference between the invoice value of the goods damaged and freight, and the net proceeds of the sale of them, together with interest and costs, for which judgment may be entered.