## BOSTON & MAINE RAILROAD *v.* PIPER.

ERROR TO THE SUPREME COURT OF THE STATE OF VERMONT.

No. 208. Submitted March 14, 1918.—Decided April 15, 1918.

A stipulation in the Uniform Live Stock Contract, filed by the carrier with the Interstate Commerce Commission, limiting the carrier's liability for unusual delay and detention caused by its own negligence to the amount actually expended by the shipper in the purchase of food and water for the stock while so detained, is illegal, and is not binding on a shipper who executed the contract and shipped under it for the corresponding reduced tariff rate.

Such a stipulation contravenes the principle that the carrier may not

exonerate itself from losses caused by its own negligence, and is not within the principle of limiting liability to an agreed valuation which has been made the basis of a reduced rate.

Illegal conditions and limitations in a carrier's bill of lading do not gain validity from the filing of a form containing them with the Interstate Commerce Commission.

90 Vermont, 176, affirmed.

THE case is stated in the opinion.

*Mr. E. W. Lawrence* for plaintiff in error:

The words "unusual delay or detention of said live stock caused by the negligence of said carrier," define a situation for which legal liability will exist. What follows is an agreement as to the basis of computing damages, once the liability has been fixed. Until the liability is determined the damage clause has no application. Its terms have no relation to a defense to liability. Nor is it in legal effect a stipulation against negligence. It is of course true that the substitution of any arbitrary measure of damages in place of the actual amount may alter the ultimate financial responsibility for negligence, but it cannot be said that such a measure is in itself a legal defense against liability. *Pierce Co.* v. *Wells, Fargo & Co.,* 236 U. S. 278; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin,* 241 U. S. 319.

The clause in question is analogous to a released valuation clause and under the decisions is therefore lawful. It is now well established law, that where the shipper has a choice between two rates, the higher of which imposes common-law liability, the carrier may under the lower rate establish by tariff provision a limitation upon the amount of damages recoverable. It has been expressly held that such a limitation or agreed valuation is not a stipulation against liability for negligence.

The reasoning in the decisions seems to be that, where the shipper has the option of shipping at a higher rate, subject to the carrier's common-law liability, there is no

principle of public policy or statute which precludes the carrier from setting a limit on the amount of damage recoverable when the shipper elects to avail himself of a lower rate. The carrier's risk has a direct relation to the rate; and the publication of a lower rate, acceptance of which is optional with the shipper, entitles the carrier to stipulate for a lesser risk. The clause under consideration in this case is in every way analogous. In claims for loss or damage the total loss to the shipper is the actual value of the portion of the shipment destroyed or injured. However, he recovers not that value but the released valuation to which he has agreed. In claims for delay the total loss to the shipper is the extra expense of caring for his stock, plus any loss which he may suffer through market fluctuation. Under the clause in question he recovers not the total loss, but an amount to which he has agreed, namely his actual expenditure. In a claim for loss or damage the released valuation is an arbitrary sum, bearing a relation to the average value of such shipments. In a claim for delay the clause in question is a varying amount bearing a relation both to the extent of the delay and the average loss attributable thereto. If the shipper desires more complete protection he may pay the higher rate and obtain it. Both classes of limitation are adjustments of the carrier's risk to the rate charged. Such adjustments are sanctioned by the law. *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S. 639; *Boston & Maine Railroad* v. *Hooker,* 233 U. S. 97.

It has been held "that the legality of the contract does not depend upon a valuation which shall have a relation to the actual worth of the property." It has also been held that if the limitations were unreasonable, it is for the Interstate Commerce Commission to correct them upon proper proceedings. *Pierce Co.* v. *Wells, Fargo & Co., supra.*

*Mr. Marvelle C. Weber* for defendant in error.

Mr. Justice Day delivered the opinion of the court.

This suit was brought by Piper against the Boston &
Maine Railroad to recover damages for loss occasioned
by delay in delivering cattle as a result of the company's
negligence. The plaintiff recovered damages and the
judgment was affirmed by the Supreme Court of Vermont.
90 Vermont, 176.

The plaintiff shipped the cattle upon paying the re-
duced rate for shipment thereof under the Uniform Live-
stock Agreement containing among other things, the
following:

"The same has been received by said carrier for itself
and on behalf of connecting carriers, for transportation,
subject to official tariffs, classifications and rules of the
said company, and upon the following terms and condi-
tions, which are admitted and accepted by the shippers
as just and reasonable. . . . That in the event of
any unusual delay or detention of said live-stock, caused
by the negligence of the said carrier, or its employees, or
its connecting carriers, or their employees, or otherwise,
the said shipper agrees to accept as full compensation
for all loss or damage sustained thereby the amount ac-
tually expended by said shipper in the purchase of food
and water for said stock, while so detained. . . . And
E. G. Piper does hereby acknowledge that he had the op-
tion of shipping the above described live-stock at a higher
rate of freight according to the official tariffs, classifica-
tions and rules of the said carrier and connecting carriers,
and thereby receiving the security of the liability of the
said carrier and connecting railroad and transportation
companies as common carriers, of the said live-stock upon
their respective roads and lines, but has voluntarily de-
cided to ship the same under this contract at the reduced
rate of freight above first mentioned."

The tariffs in effect at the time the shipment moved

provided for a rate of $42 when the Uniform Live-stock Agreement was signed and that:

"Live stock will be taken at the reduced rates fixed in the tariff only when a Uniform Live Stock Contract is executed by the station agent and the consignor, and when the release on the back of said contract is executed by man or men who are to accompany said live stock. If consignor refuses to execute a Uniform Live Stock Contract, the live stock will be charged ten (10) per cent. higher than the reduced rates specified herein, provided that in no case shall such higher charge be less than one (1) per cent. per one hundred pounds."

The company's tariffs were duly filed with the Interstate Commerce Commission and contained a copy of the Uniform Live-stock Contract as above set forth.

Interstate shipments of the character here in controversy made upon bills of lading, and under tariffs filed with the Interstate Commerce Commission, have been the subject of frequent consideration in this court. The binding character of the stipulations of the bill of lading, and of the rates as fixed in the filed tariffs, have been recognized and enforced. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Starbird*, 243 U. S. 592, and previous cases in this court therein cited.

The Carmack Amendment requires the initial carrier to issue a bill of lading, and carriers are obliged to carry the articles shipped at the rates fixed in the published tariffs. Many decisions of this court have held that the carrier may offer to the shipper and the shipper may be bound by a contract which limits recovery to a valuation declared by the shipper in consideration of the reduced rate for the carriage of the freight. This rule was stated in an early case arising after the passage of the Carmack Amendment, *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 509, 510, and has been frequently reiterated since. In the cases in which the recovery for the lesser valu-

ation has been affirmed, the shipper was offered an op-
portunity to recover a greater sum than the declared value
upon paying a higher rate to the carrier. The shipper
was offered alternative recoveries based upon different
valuations upon the payment of different rates, and was
held bound by the one chosen. Such contracts of ship-
ment this court has held not to be in contravention of
the settled principles of the common law preventing a
carrier from contracting against liability for losses re-
sulting from its own negligence, and are lawful limitations
upon the amount of recovery binding upon the shipper
upon principles of estoppel. *Hart* v. *Pennsylvania R. R.
Co.*, 112 U. S. 331; followed and approved since the pass-
age of the Carmack Amendment in *Adams Express Co.*
v. *Croninger*, 226 U. S. *supra*, and see *Wells, Fargo &
Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469; *Kansas City
Southern Ry. Co.* v. *Carl*, 227 U. S. 657; *Chicago, Rock
Island & Pacific Ry. Co.* v. *Cramer*, 232 U. S. 490; *Boston
& Maine Railroad* v. *Hooker*, 233 U. S. 97; *Atchison,
Topeka & Santa Fe Ry. Co.* v. *Robinson*, 233 U. S. 173.
Furthermore it has been held that a low valuation will
not prevent the application of the rule making the agree-
ment binding upon the shipper. *Pierce Co.* v. *Wells,
Fargo & Co.*, 236 U. S. 278, 285.

While the rule of the lesser recovery based upon lesser
rates, when the shipper has been given the option of higher
recovery upon paying a higher rate, has been held bind-
ing upon the shipper so long as the published tariff re-
mains in force, this court has not held a bill of lading con-
taining a limitation against liability for loss caused by
the carrier's negligence, such as is here involved, to be
conclusive of the shipper's right to recover. In the pre-
vious decisions of this court upon the subject it has been
said that the limited valuation for which a recovery may
be had does not permit the carrier to defeat recovery be-
cause of losses arising from its own negligence, but serves

to fix the amount of recovery upon an agreed valuation made in consideration of the lower rate stipulated to be paid for the service.

In the bill of lading, now under consideration, there is an express agreement limiting liability from unusual delay and detention, caused by the carrier's negligence, to the amount actually expended by the shipper in the purchase of food and water for his stock while so detained. This stipulation contravenes the principle that the carrier may not exonerate itself from losses negligently caused by it, and is not within the principle of limiting liability to an agreed valuation which has been made the basis of a reduced freight rate. Such stipulations as are here involved are not legal limitations upon the amount of recovery, but are in effect attempts to limit the carrier's liability for negligence by a contract which leaves practically no recovery for damages resulting from such negligence. While this provision was in the bill of lading, the form of which was filed with the Railroad Company's tariffs with the Interstate Commerce Commission, it gains nothing from that fact. The legal conditions and limitations in the carrier's bill of lading duly filed with the Commission are binding until changed by that body (*Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 654); but not so of conditions and limitations which are, as is this one, illegal, and consequently void.

We find no error in the judgment of the Supreme Court of Vermont, and the same is

*Affirmed.*