## THE ASUARCA.

(District Court, S. D. New York. April 7, 1924.)

1. **Carriers** ☞158(1)—**Provision of bill of lading that liability for loss or damage should be limited to value of goods at place of shipment held valid.**

Provision of bill of lading that carrier's liability for loss or damage should be limited to value of goods at place of shipment *held* valid as an agreement fixing the basis for damages.

2. **Carriers** ☞158(1)—**Under provision of bill of lading, shipper held entitled to recover invoice value of damaged goods at place of shipment, plus freight paid thereon.**

Under bill of lading providing that the measure of damages for goods lost or damaged

should be their value at place of shipment, the shipper *held* entitled to recover the invoice value of damaged goods, plus the freight paid thereon.

**3. Shipping ⊚➡131—Claimed set-off against damage to cargo considered.**

Carrier *held* not entitled to set off against claim for damage to cargo, amount paid for wharfage or demurrage at place of delivery, but entitled to allowance for storage of goods which shipper failed to remove from pier and cost of disposing of them.

In Admiralty. Suit by William A. Camp & Co., Inc., against the Steamship Asuarca, Hijos de Jose Taya S. en C., claimant, with two other libels and three cross-libels, consolidated by order. Decree for libelant.

Finkler & McEntire, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Harry D. Thirkield, Robert S. Erskine, and William O. Goddard, all of New York City, of counsel), for claimant and cross-libelant.

KNOX, District Judge. Article 23 of the bills of lading, under which the damaged shipments of onions were made, reads as follows:

"In case of damage or loss for which the steamship company should be responsible, the latter shall only be obliged to indemnify, by reason of them, for the actual and intrinsic value of the goods loaded, ascertained from the invoices of origin, or from valuation given by competent persons, without being obliged to pay any indemnification for profits not made nor for increased valuation."

[1] It was the special commissioner's thought that the foregoing clause, limiting the carrier's liability, in case of loss or damage to the goods, to their value at the place of shipment, is invalid under the authority of Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 S. Ct. 151, 28 L. Ed. 717, and Boston & Maine R. R. v. Piper, 246 U. S. 439, 38 S. Ct. 354, 62 L. Ed. 820, Ann. Cas. 1918E, 469. He believed that such agreement, in order to be upheld, required that the expressed liability should have been made the basis of a reduced freight rate.

In reaching this conclusion, I think the commissioner erred. While the clause would, under certain conditions, serve as a limitation of the carrier's liability, it did not amount to, nor even approximate, an attempt to exonerate the carrier from its own negligence, as was the case in Boston & Maine R. R. v. Piper, supra. Here the agreement of the parties went beyond a mere limitation of the carrier's liability, and became a conventional valua-

tion of the goods to be applied in fixing damages. See Duplan Silk Co. v. Lehigh Valley Ry. Co., 223 F. 600, 602, 139 C. C. A. 146.

In the case of The Oneida, 128 F. 687, 63 C. C. A. 239, there seems to have been no doubt expressed as to the validity of a clause such as is now under consideration. As bearing upon the question of freight moneys under a clause fixing damages as of the place of shipment, the court said: "There is much force in the argument that * * * the shipper should not lose the amount paid for freight." In his concurring opinion, Judge Wallace expressed himself as follows:

"The clause was probably inserted for the benefit of both parties, and to relieve either from the chances of an excessive loss arising by abnormal fluctuations in the market value of the goods occurring after the time of shipment, and whereby the market value at the time of delivery might be much higher or much lower than at the time of shipment, or than ordinarily. Reading it as intended to eliminate an element of uncertainty in estimating possible loss, it can be given due effect without burdening the shipper with the cost of the transportation of the goods. Under a bill of lading like the present the shipper's loss is fairly measured by the difference between the cost or value of the goods at the time and place of shipment and their value in their damaged condition at the place of delivery, together with the expenses incurred for their transportation. The carrier really obtains the benefit of the transportation, and the shipper does not, because, applying this rule of damages, the carrier is allowed the value of the damaged goods at their place of delivery. There is no justice in requiring the shipper to pay for a benefit which inures wholly to the carrier."

For a further discussion of limitation clauses of this character by Judge Addison Brown, see Pearse v. Quebec S. S. Co. (D. C.) 24 F. 285.

[2] In consequence of what seems to have long been the law of this circuit, I hold that libelant's damages should be the invoice value of the damaged goods plus the freight paid thereon. Without discussion, it is my opinion that respondent's argument to the effect that freight is not a proper element of damage cannot be substantiated. I merely observe that some degree of mutuality and fairness is still demanded of a contract.

[3] The commissioner did rightly in refusing to allow as offsets to libelant's damages any charge of wharfage, as such, of the Asuarca. The same is true as to the claim for demurrage. Cross-libelants were bound to dis-

charge the cargo; and when libelants failed within due season to remove the onions, and by so doing allowed them to perish, they imposed upon claimants the necessity of disposing of them. The fair and reasonable cost of doing so is properly chargeable to libelants, and in such cost there should be included such sum as represents the storage value of the space on the pier which was occupied by the onions. This is what was meant when I said in my original opinion that claimant might offset as against libelant's damages a part of the pier rent. A fair storage charge, however, would be far less than $200 per day. That sum included the berth of the vessel.

By lying at the pier, she made it impossible for another steamer to berth there, and, in addition, she was thus enabled to take on cargo for her outward voyage. Had the Asuarca not remained at the pier, I have no doubt, considering the lack of steamer berths then existing, that another steamer would have gone in, even though the onions had not been removed. For these reasons, the question of wharfage, as such, is eliminated. As for demurrage, I think there is no basis for the claim made on account thereof. Cross-libelants could have disposed of the onions without the presence of the vessel.

The following items will be allowed as offsets: (1) A fair and reasonable charge for storage of the onions beyond the time at which libelant should have removed them; (2) the reasonable cost and expense of breaking down libelant's portion of the cargo on the pier and of towing the same to sea.

It is high time that this case should be finally disposed of, and I hope the parties may, without further testimony, agree upon the sums to be fixed by the final decree. If they are unable to do so, I will take any evidence that may be required.

Claimant's and cross-libelant's exceptions first, third, seventh, and ninth are overruled. The second, fourth, fifth, sixth, eighth, and tenth are sustained.