Raymond F. Kilthau, Plaintiff, *v.* International Mercantile Marine Company, Defendant.

Second Department, May 7, 1926.

Carriers — carrier of goods — action to recover damage to flour shipped by boat — limitation of liability to invoice value void where no choice of rates is given.

A limitation of liability on the part of a carrier of goods for damage caused by its negligence to invoice value of goods shipped, is void and the shipper may recover the actual damages, computed on the market value at destination where the carrier does not give the shipper a choice of rates.

Submission of a controversy upon an agreed statement of facts, pursuant to section 546 of the Civil Practice Act.

*Neil P. Cullom* [*James E. Freehill* with him on the brief], for the plaintiff.

*Ray Rood Allen,* for the defendant.

YOUNG, J.   The plaintiff, a flour merchant of New York city, seeks to recover from the defendant, a common carrier of goods for hire, damages to a shipment of flour from San Francisco, Cal., to New York city.   The flour was delivered to defendant in good condition and order.   The damage for which defendant concedes liability was caused by negligent stowage, the flour having been stowed next to cedar shingles, whereby it became tainted and damaged.   The only question presented is the measure of damages. The damage computed on the basis of the invoice value amounts to $832.58, which sum has been tendered to plaintiff by defendant, but was not accepted.   Computed on the market value at destination, it amounts to $1,842.08.

The bill of lading issued to plaintiff contained, among other provisions, the following:   " The freight on the cargo, carried hereunder is regulated in consideration of all the terms of this contract and is based partly on the value of the cargo.   Unless a greater value shall be declared and written in the bill of lading as a basis for adjustment of freight and freight paid thereon accordingly, the value of general cargo does not exceed $100 per package, and of household goods or personal effects does not exceed $5 per 100 lbs., and in computing any liability of the carrier, no value shall be placed thereon higher than $100 per package of general cargo or $5 per 100 lbs. of household goods or personal effects (but in no case higher than invoice value), or the proportionate part of such value in case of any partial loss or damage."

At the time of this shipment, flour being of a value less than $100 per hundredweight, defendant had in effect only one rate applying to the shipment of flour between the points in question, namely, thirty cents per hundredweight.   It offered shippers of commodities of greater value than $100 per package two different rates, a lower one based on the bill of lading valuation and a higher *ad valorem* rate applicable if the shipment is declared to be of a value higher than the bill of lading valuation.

It is contended by plaintiff that the limitation of liability contained in the bill of lading is void as against public policy and without consideration, in that no choice of rates was given.

In *St. Johns Corp.* v. *Companhia Geral, etc.* (263 U. S. 119) it was said:   " Generally, the measure of damages for loss of goods by a carrier when liable therefor is their value at the destination to which it undertook to carry them."

In *Union Pac. R. R. Co.* v. *Burke* (255 U. S. 317) the court used the following language: " In many cases, from the decision in *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, decided in 1884, to *Boston & Maine R. R.* v. *Piper*, 246 U. S. 439, decided in 1918, it has been declared to be the settled Federal law that if a common carrier gives to a shipper the choice of two rates, the lower of them conditioned upon his agreeing to a stipulated valuation of his property in case of loss, even by the carrier's negligence, if the shipper makes such a choice, understandingly and freely, and names his valuation, he cannot thereafter recover more than the value which he thus places upon his property. As a matter of legal distinction, estoppel is made the basis of this ruling — that, having accepted the benefit of the lower rate, in common honesty the shipper may not repudiate the conditions on which it was obtained — but the rule and the effect of it are clearly established. \* \* \* This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants (112 U. S. 331, 338, and 246 U. S. 439, 444, *supra*), and valuation agreements have been sustained only on principles of estoppel and in carefully restricted cases where choice of rates was given — where ' the rate was tied to the release.' Thus, in the *Hart Case* (p. 343) it is said: ' The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.' And in the *Piper* case it is said (p. 444): ' In the previous decisions of this court upon the subject it has been said that the limited valuation for which a recovery may be had does not permit the carrier to defeat recovery because of losses arising from its own negligence, but serves to fix the amount of recovery upon an agreed valuation made in consideration of the lower rate stipulated to be paid for the service.' "

As, under the facts existing in this controversy, there was and could have been no choice by plaintiff between a lower or a higher rate of freight, I think these decisions are controlling.

It is contended by the defendant, however, that the rule laid down in the *Burke* case and analogous cases applies only where

the limitation of liability is to an arbitrary sum such as $100 per package, having no relation whatever to the actual value of the commodity. In such case the defendant concedes that the shipper must be given the option to ship at a higher valuation on payment of a higher rate, but that invoice value clauses have long been used by carriers and shippers as a basis of adjusting claims and have been sustained in the courts without reference to choice of rates. In support of this contention, defendant cites *The Hadji* (18 Fed. 459), where the clause in controversy limited the damages to the invoice value of the goods. The court, in that case, sustained that clause, distinguishing it from the $100 clause applicable to shipments without reference either to cost or value or amount of goods shipped, and then said (p. 461): " In a stipulation which subjects the carrier to liability for all actual cost or outlay, and in effect merely excepts expected profits, there is no lack of inducement in the carrier to the utmost care and diligence; nor can the additional liability for expected profits, through recovery of the value in a foreign market, be deemed to add substantially to the motives already existing as a guaranty for the full performance of a carrier's duty. * * * The invoice value, as the limit of liability, renders the ascertainment and adjustment of the damages comparatively easy."

The same ruling was made in *Pearse* v. *Quebec Steamship Co.* (24 Fed. 285) and by the Interstate Commerce Commission in *Shaffer & Co.* v. *Chicago, etc., R. Co.* (21 I. C. C. 8).

Defendant also cites a recent decision by Judge KNOX in *Cramp* v. *The Asuarca* (1924 A. M. C. 736) where a similar ruling was made. In that case, however, the clause in question was in substance that the steamship company in case of loss should only be obliged to indemnify for the actual and intrinsic value of the goods loaded, ascertained from the invoice of origin or from valuation given by competent persons without being obliged to pay any indemnification for profits not made nor for increased valuation.

The case of *Grossman Mfg. Co.* v. *N. Y. C. R. R. Co.* (181 App. Div. 764), cited by the defendant, held the carrier liable for the invoice value under a clause limiting its liability to the value at the time and place of shipment. The point decided in that case, however, was that, under such a clause, the shipper was entitled only to the actual damage to its property and not to any consequential damage arising either from delayed delivery or from inability to use it for any period of time because of its damaged condition. No point seems to have been made by the shipper in that case that this provision was void because no choice of rates was given.

No case from the United States Supreme Court is cited by the defendant in support of its contention, and I think that the decisions of that court, above cited, are controlling. While none of them presents precisely the same facts as the case at bar, I can see no good distinction in principle between a limitation of liability to an arbitrary sum or to the invoice value of the shipment. Whether the liability is limited to a valuation of $100 per package, or to the invoice value, it is a limitation of liability for damages less than the amount recoverable at common law, and that, as I understand the rule laid down by the United States Supreme Court, cannot be accomplished without giving the shipper a choice of rates.

The plaintiff also contends that the negligent stowage by the defendant constituted a deviation; that its negligence deprived it of the protection of the relieving clause in the bill of lading, and that the ship was unseaworthy quoad flour and, therefore, responsible for the full damage. But, in the view I have taken of the case, it is unnecessary to consider these questions.

Judgment should be directed for the plaintiff for $1,842.08, with interest from May 1, 1924, together with costs.

Present — KELLY, P. J., RICH, MANNING, YOUNG and LAZANSKY, JJ.

Judgment unanimously directed in favor of plaintiff in the sum of $1,842.08, with interest from May 1, 1924, together with costs.