# INDIANA HARBOR BELT R. CO. v. JACOB STERN & SONS.

## No. 434.

District Court, N. D. Illinois, E. D.

March 18, 1941.

Sidney C. Murray, F. W. Flott, and John B. Kneipple, all of Chicago, Ill., for plaintiff.

Paul E. Blanchard, of Chicago, Ill., for defendant.

IGOE, District Judge.

In this case the Indiana Harbor Belt Railroad Company, plaintiff, seeks to recover from the defendant certain demurrage charges alleged to have accrued, in connection with the detention at destination, of two tank cars, shipped from Chicago, Illinois, through the State of Indiana to Calumet City, Illinois. Defendant moves to dismiss, asserting that the complaint states no cause of action.

The facts are undisputed and are as follows:

In 1937, on March 17th and April 7th, respectively, Armour and Company shipped two tank carloads of inedible grease from the stock yards district to the defendant at Calumet City, Illinois. The cars were not railroad owned and were under lease to the defendant. At the time each car began to move it bore a "board" or sign reading "This tank car leased to Jacob Stern and Sons". Under the terms of the demurrage

tariff involved, this lease was equivalent to ownership of the car by the defendant. Upon arrival at Calumet City the cars were placed for unloading upon a track owned in fee by the defendant. It should be observed that after this spotting was done, no further service was rendered, or no other facility was furnished, by the plaintiff. Its bill of lading contract was entirely performed and thereafter it furnished no car, or no track, nor any further service to defendant.

The demurrage tariff in effect at this time clearly exempted a shipper's car, standing on a shipper's track, from demurrage, and provided as follows: "When a leased car is held for unloading * * * it shall not be exempt from demurrage unless the name of the lessee is on the car when it leaves the point of shipment, as evidenced by notation on the bill of lading, and way bill reading 'Car leased to (name of owner of track)'."

Plaintiff contends that this language requires that the sign be on the car, and that the required endorsements appear upon the bill of lading and waybill, all "before the car leaves the point of shipment," and that the absolute duty to collect the claimed demurrage was imposed upon them, regardless of its reasonableness or unreasonableness, by the decision of the Supreme Court in Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900. Defendant urges that the quoted words apply only to the placing of the sign upon the car, and that there is no time requirement imposed as to the notation on the shipping documents, other than is contained in the opening phrase, "When a car is held for unloading," and that since no service or thing of value was received by defendant, that any tariff imposing a charge under such circumstances was illegal, regardless of the reasonableness or unreasonableness of the charge.

On the two cars in question, the name of the lessee was on the car when it left the point of shipment. The notation was not placed on the waybill or bill of lading until some time after the car "left the point of shipment", but was so placed before the "leased car" was "held for unloading."

The primary question to be decided is whether the notation must be on the bill of lading and waybill before the car left the point of shipment, or whether the addition of the notation on those documents, at a later time, but before arrival, sufficed to exempt the car from demurrage, under the tariff language above quoted.

■ There is no question of any use of unusual words or of words involving unusual or technical meanings, so this court has original jurisdiction to interpret the tariff, as well as to consider its legality. Great Northern Railway v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. We shall consider the question of interpretation first.

The order of statement, the punctuation and the words selected provide no time limit for the notation of the bill of lading and waybill, other than is provided in the opening phrase, "When a leased car is held for unloading." The reference to the time the car leaves the point of shipment applies only to the requirement that the name of the lessee be on the car. The tariff goes no further than to require that the existence of that condition at that time be "evidenced" in a certain way. Funk and Wagnall's dictionary defines "evidence" as "attest, prove, show clearly, make plain". A fact existing today may be proven, or shown clearly tomorrow. None of these words convey the thought that the proof must be made simultaneously with the fact proved.

■ Even if we regarded this tariff as capable of two interpretations, certain well-recognized rules of tariff interpretation would require us to select the interpretation above made. Tariffs are written by the carriers. It is presumed that they have used all the words necessary to protect their own interests. Therefore, it is the rule, followed by the courts and the Commission, in doubtful cases, to adopt that interpretation of the tariff which is most favorable to the shipper. United States v. Gulf Ref. Co., 268 U.S. 542, 45 S.Ct. 597, 69 L.Ed. 1082.

■ It would have been a simple matter for the tariff authors to have rearranged and repunctuated the tariff language so that the meaning they now assert would have been clear, e. g., " * * * shall not be exempt from demurrage unless the name of the lessee is on the car and that fact is evidenced by notation on the bill of lading and waybill, before the car left the point of shipment." The carriers did not so state, so we must assume they did not so intend.

Under the plaintiff's interpretation there were three acts all of which they say had to be done "before the car left the point of shipment". The boarding of the car, having been done here, needs no further considera-

tion. There remains the consideration of the required notation on the bill of lading and waybill.

It is clear that the carrier alone controlled the time these documents were noted, as provided in the tariff. The carrier alone controlled the time the car left the point of origin. It was therefore within the power of the carrier (if the tariff were interpreted as it contends), to apply demurrage to one car, and to exempt another, both of which left the point of origin at the same time; both of which received identical handling to, and at the same destination; by the accidental or intentional device of issuing and noting one bill of lading and waybill before the cars were taken from the loading track and holding up the other until after that time. To interpret a tariff as authorizing such illegal consequences is to do violence to the underlying principle of the Commerce Act requiring a carrier's charges to be uniformly applied in identical cases. On the authority of Great Northern Railway v. Delmar Company, 283 U.S. 686, 51 S.Ct. 579, 75 L.Ed. 1349 and Hohenburg v. Louisville & N. R. Co., 5 Cir., 46 F.2d 952, the court may not adopt an interpretation of a tariff producing such illegal and unusual results.

Even if these principles be disregarded, and the plaintiff's interpretation adopted, we would still be compelled to dismiss this suit upon a more fundamental ground upon which, in the last analysis, our decision rests.

■ It is axiomatic that a tariff charge does not become applicable merely because it is published. Before any tariff charge can become due, there must have been some service rendered or facility furnished by a carrier, constituting the consideration for the tariff charge. In the case at bar, it is conceded that after the carrier had completed the contract of transportation, represented by the bill of lading, and received its tariff rate therefor, it thereafter did nothing or furnished nothing. The car was the shipper's car, the track was the shipper's track. When the car was spotted on that track, the consideration furnished by the carrier ended. And the transportation rate constituted the entire and only possible payment for the carrier's service up to that point. This was fully paid.

■ Demurrage charges are not a part of the line haul rate charged for the movement of the shipment. They are transportation charges assessed for the storage of the shipment, before or after movement, either in a carrier's car, or on a carrier's track, or both. The contractual status is that which arises under a day by day contract for such storage service. And no obligation to pay any demurrage charge arises, until a consignee receives a consideration in the form of a carrier service. Horton v. Tonopah & G. R. Co., D.C., 225 F. 406; Chesapeake & O. Coal Co. v. Toledo & O. C. Ry. Co., 4 Cir., 245 F. 917.

■ In the case at bar there was no obligation to pay demurrage when the defendant's cars were spotted on defendant's tracks. The tariff provided that none should accrue under any circumstances, for the "free-time" period, which began forty-eight hours after the first 7 A. M. following delivery. Regardless of tariff provision, there was no authority of law to collect any demurrage from this defendant, unless, after the free time, he received some consideration in the form of use of a car or a track not his own, or a service or facility received from the carrier. In the case at bar, after the elapse of the free time we find the ownership of the car and track was the defendant's. Thereafter it received nothing from the plaintiff which could constitute a consideration, for any contract to pay demurrage. A tariff requiring payment of demurrage under such circumstances is void as a matter of law, for want of consideration. It is of the same legal effect as a freight rate he paid on a shipment which was never transported.

■■ The decisions of the Commission from the beginning recognize the right of a car owner to hold a car on his own track without becoming liable for demurrage. In the Matter of Demurrage Charges on Privately Owned Cars, 13 I.C.C. 378; In the Matter of Private Cars, 50 I.C.C. 652. A carrier cannot avoid obligations imposed by statutory or common law, by publishing and filing a tariff to that effect. Boston & M. R. R. v. Piper, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820, Ann.Cas.1918E, 469; Franklin v. Southern Pac. Co., 203 Cal. 680, 265 P. 936, 59 A.L.R. 118.

Since the plaintiff here seeks to recover charges accruing upon a contract for which there was no consideration, the complaint fails to state a cause of action, and the motion to dismiss is granted.