**ROYAL & SUN ALLIANCE INSURANCE PLC,**
Plaintiff,

v.

**ROGERS TRANSPORTATION MANAGEMENT SERVICES, INC., UPS Supply Chain Solutions, Inc., and Saffe Property and Casualty, LP d/b/a Onley Insurance Agency, Defendants.**

No. 09 Civ. 5182(SAS).

United States District Court, S.D. New York.

Aug. 11, 2010.

David Thomas Maloof, Esq., Thomas Mark Eagan, Esq., Jacqueline M. James, Esq., Maloof Browne & Eagan LLC, Rye, NY, for Plaintiff.

Vincent M. DeOrchis, Esq., DeOrchis, & Partners, LLP, New York, NY, for Defendant UPS Supply Chain Solutions, Inc.

Jean M. Gardner, Esq., Schindel, Farman, Lipsius, Gardner & Rabinovich, L.L.P., New York, NY, for Defendant Rogers Transportation Management Services, Inc.

Kevin Joseph Windels, Esq., D'Amato & Lynch, New York, NY, for Defendant Saffe Property and Casualty, LP, d/b/a Onley Insurance Agency.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge:

### I.  INTRODUCTION

Royal & Sun Alliance Insurance, PLC ("RSA") brings this action on behalf of its subrogee, Ethicon, against UPS Supply Chain Solutions, Inc. ("UPS"), Rogers Transportation Management Services, Inc. ("Rogers"), and Onley Insurance Agency ("Onley"). RSA asserts claims for breach of contract, breach of bailment obligations, breach of fiduciary duty, and deceptive business practices. RSA now moves for partial summary judgment holding UPS liable for $250,000, and holding Rogers liable for the full value of the loss. This opinion determines liability only. Damages will be assessed at a later proceeding. For the reasons stated below, the motion is granted.

## II. BACKGROUND

■ Rogers provided transportation services to Ethicon from 1989 until 2009.[1] In 2003, Ethicon hired UPS as its logistics services provider.[2] In a declaration submitted in opposition to this motion, Ethicon requested UPS to continue using Rogers to transport sutures from Dallas to San Angelo, and UPS did so.[3] Additionally, officers from both UPS[4] and Rogers[5] have stated in declarations submitted in opposition to this motion that from 2003 onwards UPS and Rogers had established a business practice permitting Rogers to limit its liability to $250,000. Defendants have not produced any written proof of this alleged practice. No terms reflecting this limitation appear on the delivery receipts used by Rogers.[6] Defendants' only proof of this practice is a certificate of liability insurance in the amount of $250,000 from Onley to Rogers, which they maintain is evidence of an agreement between Rogers and UPS to limit Rogers's liability.[7]

In late May 2008, Ethicon entered into a freight forwarding contract with UPS, which the parties referred to as a "Logis-tics Services Agreement" ("the LSA").[8] Section 10.2(a)(iii) of the LSA contains a limitation of liability clause, which limits UPS's liability for "freight forwarding or motor broker Services, including arranging for inland or air transportation [to] $250,000 per shipment for finished Goods shipments and $100,000 for all other shipments . . . ."[9] Section 10.4, entitled "Third Party Carrier's Liability for Loss or Damage," provides in relevant part:

> Seller [UPS] will only use Third Party carriers approved by Buyer [Ethicon] for the purpose of transporting Goods under this Agreement. *Seller shall ensure* that all agreements with such Third–Party carriers require (a) that the Third Party carrier be liable for loss or damage to Goods while under its care, custody and control in the amount of $250,000 per finished goods shipment . . . (b) *that the Third Party carrier obtain motor cargo insurance in the amount of $250,000* per occurrence to cover lost or damaged finished Goods . . . caused by carrier's negligence . . . (c) *that Buyer be named as a third-*

---

1. *See* Declaration of Larry Rogers (President of Rogers Transportation Management) in *Opposition to Plaintiff's Motion for Summary Judgment* ("Rogers Decl.") ¶ 14.

2. *Id.* ¶ 5.

3. *Id.*

4. *See* Declaration of Bradley Pederson (UPS City Manager, Dallas) in Opposition to Motion for Summary Judgment ("Pederson Decl.") ¶ 3; Declaration of Pamela Perkins (UPS Contracts Administrator) in Opposition to Motion for Partial Summary Judgment ("Perkins Decl.") ¶¶ 3, 4.

5. *See* Rogers Decl. ¶¶ 5–9.

6. *See* Delivery Receipt, Ex. 3 to Rogers Decl. RSA refers to this document as a "bill of lading." "A bill of lading records that a car-rier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). The delivery receipt here does none of these things, other than naming UPS as the customer.

7. *See* Defendants' Joint Opposition to Plaintiff's Motion For Summary Judgment ("Def. Opp.") at 7; Certificate of Liability Insurance Dated 10/30/08, Ex. 2 to Rogers Decl.

8. *See* Defendants' Rule 56.1 Statement ("Def. 56.1") ¶ 1; Plaintiff's Rule 56.1 Statement ("PL 56.1").

9. LSA, Ex. 1 to Declaration of Jacqueline James (Plaintiff's Counsel) in support of Motion for Summary Judgment ("James Decl.") § 10.2(a)(iii).

*party beneficiary* of such agreement.... Notwithstanding the foregoing, Buyer acknowledges and agrees that the carrier of the Goods shall have the risk of any loss of or damage to the Goods managed pursuant to this Agreement while the Goods are in such carrier's care, custody or control on such terms and conditions as *may be agreed upon in writing* between Seller and the carrier. Notwithstanding anything to the contrary in this Agreement, Seller shall have no liability for any loss of or damage to any Goods transported by a carrier ... and, in each such event, any claim of loss of or damage to such Goods shall be governed by the applicable agreement with such carrier. In no event shall Seller have any responsibility to pay any amounts which a carrier fails or refuses to pay with respect to any carrier claims *except in the event Seller fails to comply with the guidelines set forth in this Agreement regarding hiring carriers.*[10]

UPS accepted a shipment of sutures, a "finished product" under the terms of the LSA, on behalf of Ethicon in Lorenzo, Puerto Rico, and arranged for the shipment to travel by air to Dallas, Texas.[11] UPS used Rogers to then transport the goods by land.[12] On or about October 18, 2008, while the shipment was en route from Dallas, Texas to Ethicon's facility in San Angelo, Texas, the Rogers truck carrying the shipment veered off the highway, entered a ditch and struck a tree.[13] Following the accident, Ethicon determined the value of the damaged sutures to be $407,208.83, and RSA—as Ethicon's insurer—paid this amount to Ethicon.[14]

Rogers's insurer, Onley, provided a certificate of insurance dated April 9, 2008 to Rogers, stating that Rogers was covered in the amount of $250,000.[15] Rogers then provided that certificate to UPS.[16] After the accident, however, defendants discovered that the certificate was incorrect—Rogers's policy with Onley was in fact only for $100,000.[17] It is unclear why this error occurred. In addition to this deficiency in coverage, defendants admit that "Ethicon was not a named third-party beneficiary" on either the $100,000 policy in place at the time of the accident, or the $250,000 certificate subsequently issued to Rogers in order to correct this error.[18] RSA now claims that Rogers is responsible for the full value of the shipment, and that UPS is liable for $250,000 of the damage.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19] " 'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

10. *Id.* § 10.4 (emphasis added).

11. *See* Pl. 56.1 ¶¶ 3, 9.

12. *See id.* ¶ 6.

13. *See id.*

14. *See id.* ¶ 10.

15. *See* Certificate of Liability Insurance Dated 4/9/08, Ex. A to Pederson Decl.

16. *See* Pederson Decl. ¶ 3.

17. *See* Rogers Decl. ¶ 12.

18. Def. Opp. at 13. *See also* Certificate of Liability Insurance Dated 10/30/08, Ex. 2 to Rogers Decl.

19. Fed.R.Civ.P. 56(c).

A fact is material if it might affect the outcome of the suit under the governing law.' " [20] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ." [21] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim." [22]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[23] The non-moving party must do more than show that there is " 'some metaphysical doubt as to the material facts,' " [24] and it " 'may not rely on conclusory allegations or unsubstantiated speculation.' " [25] Nevertheless, " 'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " [26]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[27] Even so, " 'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.' " [28] " 'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.' " [29] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." [30]

## B. Federal Common Law

■ Under federal common law,[31] a motor carrier is liable for actual loss or

---

**20.** *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir.2008)).

**21.** *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir.2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir.2007)).

**22.** *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.2008).

**23.** *See id.*

**24.** *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir.2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

**25.** *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir.2001)).

**26.** *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**27.** *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir.2009) (citing *Anderson*, 477 U.S. at 247–50, 255, 106 S.Ct. 2505).

**28.** *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir.2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir.1997)).

**29.** *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997)).

**30.** *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir.2009).

**31.** The federal statute that normally governs motor transportation involving interstate commerce, the Carmack Amendment, is inapplicable where the transport at any stage includes air carriage. *See* 49 U.S.C. § 13506(a)(8)(B) (exempting "transportation of property . . . by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous move-

damage to the freight it is carrying, subject to certain limited exceptions.[32] Contractual provisions that purport to relieve common carriers from liability for loss or damage to cargo *entirely* are invalid and unenforceable as against public policy.[33] However, under the "released value" doctrine, contractual provisions that merely *limit* carrier liability for lost or damaged cargo ordinarily are valid and enforceable if they satisfy two prerequisites. *First,* the limitation of liability must be in a "reasonably communicative form," resulting in a " 'fair, open, just, and reasonable agreement' " between carrier and shipper.[34] The policy behind this requirement is to ensure that the shipper has notice of the limitation prior to contracting with the carrier and that the carrier is aware of the extent of its liability.[35] *Second,* the carrier must give the shipper " 'the option of higher recovery upon paying a higher rate.' "[36] Further, the Supreme Court in *Norfolk Southern Railway Co. v. Kirby* explained that "[w]hen an intermediary [UPS] con-

tracts with a carrier [Rogers] to transport goods, the cargo owner's [Ethicon's] recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed."[37]

## IV. DISCUSSION

### A. UPS Is Liable to RSA

■ The LSA states that while the goods are in the custody of a third-party carrier, that carrier, and not UPS, is liable for any loss or damage "except in the event [UPS] fails to comply with the guidelines set forth in this Agreement regarding hiring carriers."[38] UPS has failed to comply with the LSA's guidelines. The "guidelines for hiring carriers" required UPS to make certain that Ethicon was named as a third-party beneficiary for a policy of $250,000.[39] Instead, Rogers carried only $100,000 of insurance, and Ethicon was not named as a third-party beneficiary on that policy. UPS argues that

ment, has been or will be transported by an air carrier"). Thus, federal common law applies. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc.,* 235 F.3d 53, 56, 59–60 (2d Cir.2000) (applying federal common law to domestic air movements and related motor vehicle transportation); *Ingram Micro, Inc. v. Airoute Cargo Express, Inc.,* 154 F.Supp.2d 834, 839 (S.D.N.Y.2001) ("[F]ederal common law is properly applied where the particular facts of a case may fall outside the literal coverage of a federal statute . . . .").

**32.** *See Shippers Nat'l Freight Claim Council, Inc. v. Interstate Commerce Comm'n,* 712 F.2d 740, 745 (2d Cir.1983) (holding that at common law, unless damage to goods in the care of a carrier is caused by "an act of God, a public authority, a public enemy, or the shipper, or . . . the inherent vice or nature of the goods themselves, the carrier was liable for the full extent of the loss").

**33.** *See Skyway,* 235 F.3d at 59.

**34.** *Id. Accord Shippers,* 712 F.2d at 746.

**35.** *See Shippers,* 712 F.2d at 746; *Read–Rite Corp. v. Burlington Air Express, Ltd.,* 186 F.3d 1190, 1198 (9th Cir.1999).

**36.** *Shippers,* 712 F.2d at 746 (quoting *Boston & Maine R.R. v. Piper,* 246 U.S. 439, 444, 38 S.Ct. 354, 62 L.Ed. 820 (1918)).

**37.** *Kirby,* 543 U.S. at 33, 125 S.Ct. 385. The *Kirby* Court noted that it derived this rule from *Great N. Ry. Co. v. O'Connor,* 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703 (1914), where without a shipper's express authority, an intermediary arranged for rail transit with a limitation of liability. The goods were lost en route, and the owner sued the railroad. The Court held that the carrier "had the right to assume that the [intermediary] could agree upon the terms of the shipment." *Id.* at 514, 34 S.Ct. 380. The owner's remedy, if necessary, was against the intermediary. *See id.* at 515, 34 S.Ct. 380.

**38.** LSA § 10.4.

**39.** *See id.*

because it in good faith required a certificate from Rogers in the amount of $250,000, it has met its obligations under the LSA.[40] But UPS failed to "ensure" that Ethicon was named as a third party beneficiary on *any* insurance policy—neither the erroneous $100,000 policy nor the corrected $250,000 policy subsequently issued by Onley to Rogers named Ethicon. UPS's failure to do so renders it in breach of the LSA and liable to RSA in an amount not to exceed $250,000.[41]

### B. Rogers Is Liable for the Full Value of the Loss

██ RSA argues that without a Himalaya clause,[42] Rogers cannot invoke the $250,000 limitation of liability of the LSA and is therefore liable for the full value of the loss.[43] Defendants concede that the LSA does not directly protect Rogers.[44] Instead, defendants correctly point out that the LSA expressly authorizes UPS to engage a third-party carrier.[45] Defen-

dants argue that pursuant to this authorization, Rogers and UPS entered into an agreement which limited the liability of both Rogers and UPS to a combined $250,000.[46] However, neither Rogers nor UPS have produced any evidence of this agreement beyond the declarations of their own officers and the certificates of liability insurance that fail to name Ethicon as a third party beneficiary.

██ RSA argues that Ethicon limited UPS's authority to enter into downstream contracts by "requiring [UPS] to enter into *written* contracts with downstream carriers." [47] "[C]argo owners under the limited agency rule . . . are free to contractually limit intermediaries' authority to agree to contracts with any disagreeable terms—including . . . limitations of liability." [48] Thus the question is whether the LSA required UPS to enter into a written agreement in order to limit Rogers's liability to $250,000.[49]

---

**40.** *See* Def. Opp. at 13.

**41.** *See* LSA § 10.2 ("[UPS's] maximum liability to [Ethicon] arising out of or related to loss or damage to Goods shall not exceed . . . $250,000 per shipment for finished goods shipments . . . .").

**42.** "Himalaya Clauses," which extend liability limitations to downstream carriers, take their name from an English case involving a steamship known as the *Himalaya*. *See Adler v. Dickson*, [1955] 1 Q.B. 158.

**43.** *See* Plaintiff's Memorandum of Law in Support of Partial Summary Judgment ("Pl. Mem.") at 12.

**44.** *See* Del Opp. at 8.

**45.** *See* LSA § 10.4.

**46.** *See* Def. Opp. at 7. The case at bar is therefore different from another dispute between RSA and UPS recently decided by a different judge of this Court. *See Royal & Sun Alliance Ins. PLC v. UPS Supply Chain*

*Solutions, Inc.*, No. 09 Civ. 5935, 2010 WL 3000052 (S.D.N.Y. July 23, 2010). There, the court ruled on the scope of the limitation of liability clause in the LSA, not the validity of a different agreement between UPS and a third-party carrier.

**47.** Pl. Reply at 8 (emphasis added).

**48.** *A.P. Moller–Maersk v. Ocean Express Miami*, 550 F.Supp.2d 454, 466 (S.D.N.Y.2008).

**49.** RSA initially argued that UPS had failed to obtain Ethicon's permission before using Rogers as a third-party carrier. *See* Pl. Mem. at 6. RSA now appears to concede that Ethicon did, in fact, authorize the use of Rogers as a carrier. *See* Pl. Reply at 7. Even if RSA does not concede this point, it has provided nothing to refute defendants' evidence that Ethicon had a *twenty year* relationship with Rogers, beginning in 1989 and ending in 2009, well after the accident that caused the loss at issue here. *See* Rogers Decl. ¶ 4. That relationship continued when UPS became Ethicon's logistics service provider in 2003. *See id.* ¶ 5. It would strain credulity for RSA to

The plain language of the LSA requires UPS to enter into a written agreement with third-party carriers in order to limit liability. "In interpreting a contract under New York law, 'words and phrases ... should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.' "[50] " '[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible.' "[51]

Section 10.4 of the LSA, in relevant part, states:

> Notwithstanding the forgoing, Buyer acknowledges and agrees that the *carrier* [Rogers] of the Goods *shall have the risk of any loss of or damage* to the Goods managed pursuant to this Agreement while the Goods are in such carrier's care, custody, or control *on such terms and conditions as may be agreed to in writing* between Seller and carrier.[52]

The plain meaning of this provision binds Ethicon only to terms agreed to *in writing* between UPS and a third-party carrier. Defendants' argument that "the LSA makes no requirement that there be a written agreement between [UPS] and

[Rogers]"[53] would render this clause superfluous. The certificates of liability insurance—which do not name Ethicon as a third party beneficiary—do not limit Rogers's liability to Ethicon. Defendants have failed to present any written agreement between UPS and Rogers with terms and conditions limiting Rogers's liability. Rogers is therefore liable for all damage to Ethicon's shipment, subject to proof of loss.

Both Rogers and UPS contend that some agreement—albeit unwritten—exists between them limiting Rogers's liability to $250,000. There is no reason that Rogers and UPS should not be held to the terms of an unwritten contract that both assert exist, even if that contract cannot be enforced against RSA.[54] Accordingly, although the LSA requires that Rogers is liable for all damage to the shipment subject to proof of loss and a damages inquest, Rogers is only liable for the first $250,000 pursuant to the agreement between Rogers and UPS. UPS is then liable for any remaining damage to Ethicon (not to exceed $250,000). RSA is seeking damages of $407,208.83.[55] Thus, under the terms of the LSA and the unwritten agreement between UPS and Rogers, Rogers will be liable for damages to Ethicon up to $250,000 and UPS will be liable for any

---

argue that Ethicon did not authorize Rogers as a third-party carrier.

**50.** *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir.2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir.2003)) (alteration in original). While the LSA does not contain an explicit "choice of law" provision, section 19.3 indicates that the agreement is to be arbitrated under "the substantive law of New York." LSA, § 19.3. I therefore interpret the language of the contract in accordance with New York law.

**51.** *Id.* (quoting *Shaw Group*, 322 F.3d at 124) (quotation marks omitted; alteration in original).

**52.** LSA § 10.4 (emphasis added).

**53.** Def. Opp. at 7 n. 24 (emphasis omitted).

**54.** *Kirby*, 543 U.S. at 33, 125 S.Ct. 385 ("When an intermediary [UPS] contracts with a carrier [Rogers] to transport goods, the cargo owner's [Ethicon's] recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed.").

**55.** Although RSA claims a value of $407,208,83 for the sutures, defendants assert that Ethicon valued the sutures as $346,186 for United States customs forms, thereby creating at least one issue of fact on damages that cannot be resolved on summary judgment. *See* Def. Opp. at 3 n. 4.

remaining damages in a sum not to exceed $250,000.[56]

## V. CONCLUSION

For the reasons stated herein, RSA's motion for summary judgment as to liability only is granted. The Clerk of the Court is directed to close this motion [Docket No. 18]. A conference is scheduled for August 26, 2010 at 5:00 p.m. in Courtroom 15C.

SO ORDERED.

---

**56.** *See id.* § 10.4 ("[UPS] shall have no liability for any loss of or damage to any Goods transported by [Rogers].... In no event shall [UPS] have any responsibility to pay any amounts which [Rogers] fails or refuses to pay with respect to any carrier claims *except* in the event [UPS] fails to comply with the guidelines set forth in this Agreement regarding hiring carriers.").