**KOLOGEL CO., LTD., Plaintiff,**

v.

**DOWN IN THE VILLAGE, INC., R. G. Hobelmann & Co., Inc., and Northwest Airlines, Inc., Defendants.**

**No. 81 Civ. 522 (MEL).**

United States District Court, S. D. New York.

June 3, 1982.

---

Ressa, Nappi & Weinig, Port Washington, N. Y., for plaintiff; Harvey Weinig, Stephen A. Ressa, Port Washington, N. Y., of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant Northwest Airlines, Inc.; Terrance J. Ingrao, New York City, of counsel.

LASKER, District Judge.

This action relates to a shipment of down garments by ICC Corp., ("ICC") a Korean corporation, via Northwest Airlines ("Northwest") from Seoul, South Korea to John F. Kennedy International Airport in New York. ICC sold the garments to Down in the Village, Inc. ("D/V"). Payment was to be made to Kologel by a letter of credit. The goods were shipped pursuant to an air waybill of lading, signed by representatives of ICC and Northwest. (Exhibit B to Affidavit of J.O. Shin).

The air waybill designates D/V as the "notify party" and Kologel Co., Ltd. ("Kologel") as the consignee. Kologel is ICC's wholly-owned American subsidiary. The air waybill provides that "[o]n arrival of the goods at the place of destination, subject to the acceptance of other instructions from the consignor prior to arrival of the goods at the place of destination, delivery will be made to, or in accordance with the instructions of the consignee." It also provides that notice of the goods' arrival may be given either to the consignee or the notify party.

The goods arrived at Kennedy Airport on October 24, 1980. By telephone, a Northwest employee notified D/V, who sent its agent, R.G. Hobelmann & Co., Inc., ("Hobelmann") to pick up the goods. Hobelmann's delivery service presented to Northwest a Hobelmann pick-up form and a document stating that the goods had not cleared customs but were to travel under a customs bond. The goods were released to the delivery service. Shortly after the goods were released, Kologel inquired of Northwest as to their whereabouts, and asked Northwest to trace them.

Neither ICC nor Kologel has been paid for the goods. Kologel has obtained a default judgment against D/V for the price of the goods (signed November 16, 1981), but, according to Kologel's representations, D/V is no longer in business.

Kologel claims that Northwest is liable for breach of contract by its misdelivery of the goods. It contends that the clear language of the contract required Northwest to deliver the goods to Kologel, as consignee, or in accordance with Kologel's instructions, and that, despite that clear language, Northwest made no attempt to contact Kologel, but rather delivered the goods to the agent of D/V, the notify party. Moreover, it argues that the very reason the goods were consigned to Kologel was to ensure payment by D/V. (Affidavit of Harvey Weinig, ¶ 14). It now moves for partial summary judgment against Northwest pursuant to Fed.R.Civ.Pr. 56.[1]

Kologel answers that: (1) delivery to the notify party is the ordinary, accepted practice in the industry, and that by designating D/V as the "notify party," Kologel acceded to that practice; (2) D/V was the rightful owner of the goods and accordingly it was proper for the carrier to deliver the goods to them; (3) Kologel ratified the misdelivery of the goods; and (4) Kologel is not the owner of the goods and therefore is not a proper party plaintiff.

\* \* \*

 A carrier is ordinarily liable for the value of the shipment when it delivers the

---

1. Kologel conceded at oral argument that questions of fact may exist as to the condition of the goods, which would necessitate an inquest into damages. Accordingly, it limited its summary judgment motion to the question of liability.

shipment to someone other than the party entitled to receive them. *See, e.g., Marquette Cement Mix Co. v. Louisville & Nashville R. Co.*, 281 F.Supp. 944, 947 (E.D. Tenn.1967), *aff'd* 406 F.2d 731 (6th Cir. 1969).

Northwest's defense is based primarily on the affidavit of its transportation agent, Italo Carra, which states:

"A 'notify party' has always been deemed the agent of the consignee in this industry and, therefore, the carrier has never been required to look to the consignee or the shipper for further delivery instructions."

In essence, it is Northwest's position that, because "the industry" has always deemed the notify party to be the consignee's agent for the purpose of delivery of goods, by merely naming a notify party, Kologel adopted the practice of using the notify party as its agent.

■ The difficulty with this argument is that the plain language of the contract contradicts such an interpretation. The person entitled to delivery is explicitly named as the consignee, and the role of the notify party is clearly spelled out—he is entitled to notification of arrival. A trade usage may be helpful in interpreting an ambiguous contract, but where, as here, the usage and the express terms of a contract are in direct opposition, "express terms control ... usage of trade." UCC § 1–205(4).

■ Presented with a similar defense in a suit by a consignee against a carrier, the First Department stated: "The express term, requiring delivery in accordance with the consignee's order, is controlling, whenever the course of dealing or trade custom is inconsistent with it." *Koreska v. United Cargo Corp.*, 23 A.D.2d 37, 258 N.Y.S.2d 432, 437 (1st Dept. 1965). The concerns presented in *Koreska*, in which the shipper was a foreign corporation, are applicable here:

If a trade custom or the oral waiver by an unknown purported agent, contrary to the plain terms of trade documents, were

given the effect contended for by [the carrier], the ability of such a distant person to engage in foreign trade ... would be severely and unduly handicapped. Allowance of such a practice is certainly destructive of the integrity of documents used in international trade..."

*Id.*

■ Northwest's second contention, that D/V was the rightful owner of the goods, and that it was therefore proper to deliver the goods to D/V's agent, is made in reliance on two documents: a letter of credit (Exhibit 2 to affidavit of Terrance J. Ingrao) and a "Certificate of Origin" (*Id.*, Exhibit 4). The letter of credit lists D/V as "applicant" and states that the air waybill of lading will be "consigned to" D/V. The Certificate of Origin, which appears to be an export document required by the Korean government, states that the goods will be "consigned to" D/V.

Whatever the significance of the two documents, neither indicates that D/V is the true owner of the goods, as Northwest contends.[2] Moreover, any obligation of ICC's arising under these documents to make D/V the consignee, either because of its representations to the Korean government or by virtue of representations in the letter of credit, was not in any event owed to Northwest and accordingly would not effect Northwest's contractual duty to deliver the goods to Kologel.

Furthermore, Northwest does not assert that it relied on either document in delivering the goods to D/V. To the contrary, the deposition transcript of Italo Carra, Northwest's transportation agent, (quoted in Affidavit of Harvey Weinig, ¶ 19) states that the sole reason that Northwest took delivery instructions from D/V was that D/V was listed on the air waybill as the notify party, and that no other documents were relied on.

■ Third, Northwest argues that Kologel ratified the misdelivery by demanding payment from D/V, instituting suit against D/V, and delaying in filing its claim

2. Kologel's assertion that D/V has never paid for the goods is undisputed.

against Northwest. Kologel's actions in demanding payment and instituting suit against D/V hardly constitute ratification: to the contrary, they are appropriate attempts to mitigate the damages caused by the misdelivery. With respect to Northwest's contentions concerning delay, it is undisputed that Kologel promptly notified Northwest that it had not received the goods. Moreover, Northwest does not contend that it suffered any prejudice on account of the approximately five month delay between the date of the misdelivery and the date of the institution of suit.

■ Finally, Northwest's contention that Kologel is not a proper party plaintiff because its parent was the owner of the goods in dispute is not persuasive. Kologel was the named consignee under the contract, which gave it a right to delivery of the goods. It had standing to sue to recover for Northwest's derogation of that right.

Plaintiff's motion for summary judgment against Northwest as to liability is granted.

It is so ordered.