T.B.I. INDUSTRIAL CORP., Plaintiff,

v.

EMERY WORLDWIDE, a Consolidated Freight Corporation, Defendant.

EMERY WORLDWIDE, a CF Company, Third–Party Plaintiff,

v.

ABN AMRO BANK, N.V., New York Branch; Classic Custom Brokers, Inc.; Kiron Lulla, an individual; Hiro Dasani, an individual; Deepak Khubchawdami, an individual; and Isha Dasani, an individual, Third–Party Defendants.

No. 94 Civ. 1505 (DAB).

United States District Court, S.D. New York.

Oct. 16, 1995.

David H. Singer, P.C., New York City (David H. Singer, of counsel), for plaintiff.

Condon & Forsyth, New York City (Stephen J. Fearon, of counsel), for defendant and third-party plaintiff Emery Worldwide.

Fischbein Badillo Wagner Itzler, New York City (Philip H. Kalban, of counsel), for third-party defendant Kiron Lulla.

Lowenthal, Landau, Fischer & Bring, P.C., New York City (Charles S. Biener, of counsel), for third-party defendant ABN Amro Bank N.V., New York Branch.

Skolnick & Hochberg, P.C., New York City (Ralph R. Hochberg, of counsel), for third-party defendant Classic Custom Brokers, Inc.

## MEMORANDUM AND OPINION

BATTS, District Judge.

Plaintiff T.B.I. Industrial Corp. ("T.B.I.") moves for summary judgment on its suit to recover the value of goods improperly delivered by the defendant Emery Worldwide ("Emery"). Emery opposes the motion, and cross moves for partial summary judgment limiting the maximum recovery of T.B.I. on the basis of a limitation of liability clause contained in the contract between the parties and relevant air waybills. Further, third-party defendants ABN Amro Bank ("Amro"), and Kiron Lulla ("Lulla") move for summary judgment and sanctions against third-party plaintiff Emery, who has brought this third-party action seeking to hold third-party defendants Amro, Classic Customs Brokers ("Custom"), and Lulla liable in the event Emery is held liable to T.B.I. Third-party defendant Classic moves under Rule 37(d) of the Federal Rules of Civil Procedure for sanctions, including attorneys fees and dismissal of the third-party Complaint, due to Emery's failure to appear for a scheduled deposition. Emery opposes the motions of the third-party Defendants, relying principally on a claimed need for additional discovery.

## I. BACKGROUND

Plaintiff T.B.I. is the exclusive representative in the United States of Shanghai Fong Run Foreign Trade Corporation ("Shanghai"). On October 16, 1992, the New York branch of third-party Defendant Amro Bank issued an irrevocable documentary letter of credit for $117,000 listing the beneficiary as Plaintiff T.B.I. and the applicant as Take Away Styles, Ltd. ("Take Away"), with an

expiration date of February 28, 1993. On the basis of this letter of credit, Shanghai and Plaintiff T.B.I. sold silk ladies blouses to Take Away for $104,319 in late February 1993. In March 1993, Shanghai shipped the blouses to the United States from China via China National Foreign Trade Transportation Corporation ("Sinotrans"), whose agent and air forwarder in the United States is defendant Emery. At the time of shipping, Sinotrans issued an air waybill[1] consigning the goods to "Order ABN AMRO BANK, N.V." and listing Shanghai as the shipper. Third-party defendant Classic appears on the air waybill in a box labeled "Also Notify." This air waybill states that it was executed in Shanghai on March 13, 1993, suggesting that the goods were shipped on that date.

Sinotrans consolidated these goods for shipment and contracted with Air China for their delivery to New York. Air China issued a master waybill for the consolidated shipment. The merchandise arrived in the United States and cleared customs on March 19, 1993. Emery subsequently moved the merchandise to its warehouse, located near—but not on—the premises of John F. Kennedy International Airport.

Emery alleges that third-party defendant Classic issued a pick-up order for the shipment of blouses on March 19, 1993 as the customs clearing broker. Mandeep Trucking then took the pick-up order, and delivered it along with a check for $8,057.47 for shipping costs to defendant Emery on March 23, 1993. On that date, upon receipt of the pick-up order and the check for $8,057.47, but without receiving the original air waybill, Emery released the shipment of blouses to Mandeep Trucking.

Two weeks later, on April 6, 1993, the Bank of Communications, acting on behalf of T.B.I., forwarded to Amro the letter of credit along with the documents relating to the shipment of blouses, including the air waybill. By telex on or about April 8, 1993, Amro refused to honor the letter of credit due to various discrepancies, including expiration of the letter of credit and late presentation. On

May 7, 1993, the Bank of Communications requested return of the documents, and they were returned on May 18, 1993.

On January 14, 1994, Plaintiff T.B.I. brought suit in New York County Supreme Court, seeking to recover the value of the blouses from defendant Emery. On March 4, 1994, Defendant Emery removed the action to this Court on the basis of the presence of a federal question.

On June 17, 1994, Take Away filed for Chapter 7 protection in the Southern District of New York, and a trustee was appointed who sold all the remaining inventory of Take Away, including any remaining unsold stock from the shipment in question.

On July 28, 1994, Emery filed a third-party Complaint naming Amro, Classic, Lulla, Hiro Dasani, Deepak Khubchawdami, and Isha Dasani; Emery subsequently voluntarily discontinued the third-party action as to Hiro Dasani, Khubchawdami, and Isha Dasani by stipulation.

T.B.I. now moves for summary judgment pursuant to Rule 56(a) against Emery for the full value of the misdelivered goods; Emery responds by seeking to obtain additional discovery, apparently fishing for evidence of some action on the part of Plaintiff or Third-Party Defendants that would affect Emery's liability, and simultaneously cross-moves to cap its liability pursuant to the waybill's liability limitation provision.

## II. DISCUSSION

### A. Summary Judgment Standards

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "In

---

1. An air waybill serves "for air transportation as a bill of lading does for marine or rail transportation." Black's Law Dictionary 69 (6th Ed.1990) (definition of "airbill"); *see also id.* at 168 (defining "bill of lading") and 1593 (defining "waybill").

determining whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. General Physics Services Corp.,* 50 F.3d 165, 175 (2d Cir.1995). However, the nonmovant "may not defeat a motion for summary judgment merely by pointing to a potential issue of fact; there must be a genuine issue of material fact." *Moller v. North Shore University Hospital,* 12 F.3d 13, 15 (2d Cir.1993), *quoting City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988).

### B. Plaintiff's Motion for Summary Judgment Against Defendant Emery

#### 1. *Liability*

■ "A carrier is ordinarily liable for the value of the shipment when it delivers the shipment to someone other than the party entitled to receive them." *Kologel Co., Ltd. v. Down in the Village, Inc.,* 539 F.Supp. 727, 728–29 (S.D.N.Y.1982). There is no doubt, and Emery even concedes, that "plaintiff's consignment was delivered to someone other than the consignee on the [relevant] air way-bill." (Def. Reply Memo of Law, at 1.) Accordingly, because Emery delivered the shipment to someone other than the party authorized to receive it, Emery is liable to Plaintiff for the value of the goods. *Kologel,* 539 F.Supp. at 729–30.

Classic's issuance of a pick-up order to Mandeep Trucking, reliance upon which apparently caused Emery to release the goods at issue, does not affect Emery's liability to T.B.I. Designation as the "also notify" party on the air waybill merely entitled Classic to notification of arrival; the consignee alone held the authority to receive or release the goods. *Kologel,* 539 F.Supp. at 729. Accordingly, the Plaintiff is entitled to summary judgment against Emery, as limited below.

#### 2. *Emery's request for more discovery*

In opposition, Emery makes a singular, and unconvincing, argument. Emery argues that Plaintiff's and Third–Party Defendants' motions should be denied because Emery has been denied pretrial discovery. Defendant Emery requests additional discovery, and pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, has submitted an affidavit through counsel setting forth the additional discovery sought.

■ For Defendant to oppose successfully summary judgment under Rule 56(f), its affidavit must explain: "(1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful." *Sage Realty Corp. v. Insurance Co. of N. Am.,* 34 F.3d 124, 128 (2d Cir.1994). According to Emery's Rule 56(f) affidavit, "Emery seeks to discover plaintiff's and third-party defendants' involvement in the alleged misdelivery...." (Def.Rule 56(f) Aff. ¶ 4.) The information is sought through depositions of third-party defendants Amro, Classic, and Lulla, as well as non-party witness Bank of Communications.

■ "Emery seeks to show that third-party defendants acted or omitted to act in such a way that led to Emery's eventual release of the goods. Such genuine issues of material fact conflict directly with plaintiff's and third-party defendants' allegations set forth in their summary judgment motions." (Def.'s Rule 56(f) Aff. ¶ 7.) At no point does Emery hint at or suggest what possible role the Plaintiff could have or did play in defendant Emery's misdelivery.

Emery deposed T.B.I. prior to the motion, but T.B.I. had not responded to Emery's First Set of Interrogatories. Emery noticed Amro, Classic, and Bank of Communications for depositions, which have not been held. Emery claims lack of cooperation on the part of those to be deposed; they respond that Emery's counsel failed to pursue depositions beyond serving notices.

Emery's request implicitly theorizes that the discovery may produce evidence that the third-party defendants Amro, Lulla, and Classic, in conjunction with the Plaintiff, acted in some way to cause the Defendant's wrongful release of the goods. Specifically, Emery complains that "[a]t no time did Amro Bank or T.B.I. notify Emery that the letter

of credit was no longer valid or that the original documents of title for the merchandise had been returned to T.B.I." (Aff. in Supp. of Def. & Third–Party Pl. Emery Worldwide's Cross–Mot. for Partial Summ.J. of 10/31/94, at ¶ 11.)

As explained above, Emery is liable because it delivered the blouse shipment to the wrong party. Thus, the sole issue relied upon by Emery ("that third-party defendants acted or omitted to act in such a way that lead to Emery's eventual release of the goods"), does not suffice to avoid summary judgment in favor of T.B.I. T.B.I. therefore is entitled to summary judgment against Emery as to liability for the misdelivery of the goods.

Emery concedes that "plaintiff's consignment was delivered to someone other than the consignee on the Sinotrans' [sic] air waybill." (Def. Reply Memo of Law, at 1.) However, Emery seeks to continue this action because the reasons for misdelivery are not "clear[,] since discovery is not complete." (Def. Reply Memo of Law, at 1.)

■ The problem with this position, and in general with Emery's argument that discovery is not complete, is that Emery fails to set out how a genuine issue of material fact will be raised by the information it seeks. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. The bald, conclusory, and unsupported hopes for "[s]uch genuine issues of material fact [that] conflict directly with plaintiff's and third-party defendants' allegations set forth in their summary judgment motions," (Def.'s Rule 56(f) Aff. ¶ 7), are insufficient to prove the existence of a genuine issue of material fact. Defendant must do more. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) ("If facts essential to support opposition to the summary judgment motion are not available, the nonmoving party may seek a continuance under Rule 56(f) to permit affidavits to be obtained or discovery to be had, *but may not rely simply on conclusory statements* or on contentions that the affidavits supporting the motion are not credible...." (citations omitted; emphasis added)).

As set forth in *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919 (2d Cir.1985), the nonmoving party must show what facts are sought, how they are to be obtained, and how those facts are reasonably expected to create a genuine issue of material fact. 769 F.2d at 926. Emery's opposition falls short of each of these requirements. Stephen Fearon's affidavit is absolutely devoid of any facts to be sought, or how such facts could conceivably create a genuine issue of material fact.

■ Furthermore, Emery was afforded sufficient opportunity to have completed the discovery it now seeks prior to submission of the motion. Emery filed its third-party Complaint on July 28, 1995. On August 24, 1994, in a telephone conference in this matter, this Court ordered expedited discovery to allow Emery the depositions it insisted were necessary to prepare its Local Rule 3(g) statement, and made Emery's responsive 3(g) statement due on September 26, 1994. In response to this direction, Emery deposed the Plaintiff on September 1, 1994, and on August 31, 1994 noticed Amro's deposition for September 7, 1994. For reasons not apparent to the Court, however, Amro's deposition did not occur.

On September 15, 1994, Emery served further notices, this time on Amro, Classic, and Bank of Communications for depositions to take place on September 27 and 28, 1994. (Def.'s Rule 56(f) Aff.Exs. C–E.) On September 23, 1994, Emery applied by letter for an extension of its time to file its responsive Local Rule 3(g) statement and to allow for the depositions, noticed for September 27th and 28th. At best, this request was too little, too late since, on August 24, 1994, the Court had directed Emery to submit its 3(g) statement by September 26th.

A briefing schedule was subsequently set for these motions, giving the movants until October 20, 1994 to file their motions. Emery did not reschedule the depositions during that interim period either. Because Emery

failed to avail itself of the time given for discovery, and because Emery fails in its motion papers to suggest any genuine issue as to any fact, much less any *material* fact, Rule 56(f) provides no harbor for it to seek further delay of resolution of T.B.I.'s claim for damages.

### C. Emery's Cross–Motion for Summary Judgment to Limit Liability

 Emery cross-moves for summary judgment limiting T.B.I.'s recovery on the basis of a liability limitation provision contained on the face of the underlying Sinotrans air waybill.[2] That clause reads:

> It is agreed that the goods described herein are accepted in apparent good order and condition (except as noted) for carriage SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF. THE SHIPPER'S ATTENTION IS DRAWN TO THE NOTICE CONCERNING CARRIERS' LIMITATION OF LIABILITY. Shipper may increase such limitations of liability by declaring a higher value for carriage and paying a supplemental charge if required.

(Chu Aff.Ex. E.) The conditions of contract provided on the reverse side of the waybill provides:

> [T]he charges for carriage having been based upon the value declared by the shipper, it is agreed that any liability shall in no event exceed the shipper's declared value for carriage stated on the face hereof and in the absence of such declaration by shipper liability of Carrier shall not exceed U.S. $20.00 or their equivalent per kilogram of goods destroyed, lost, damaged or delayed....

(Def.'s Mem. in Opp. to Pl.'s and Third–Party Defs.' Mot. for Summ.J., at 13.)

**2.** Emery's Answer initially raised the liability limitation provisions contained in the Warsaw Convention, 49 Stat. 3000, T.S. No. 876, reprinted at 49 U.S.C.App. § 1502 note. Plaintiff contested application of the Convention in its motion papers on the basis of *Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705 (2d Cir. 1990). In *Victoria Sales,* the Second Circuit held that the Warsaw Convention ceases to apply once a shipment leaves the premises of the airport.

 Federal common law governs the validity of such liability limiting provisions. *United States Gold v. Federal Express,* 719 F.Supp. 1217, 1223–24 (S.D.N.Y.1989). Under the federal common law, such provisions control provided "[1] the limitation of liability was the result of a 'fair, open, just and reasonable agreement' between carrier and shipper, entered into by the shipper 'for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount or risk' ... and [2] the shipper was given 'the option of higher recovery upon paying a higher rate.'" *Shippers National Freight Claim Council, Inc. v. ICC,* 712 F.2d 740, 746 (2d Cir.1983) (quoting *Adams Express Co. v. Croninger,* 226 U.S. 491, 509–10, 33 S.Ct. 148, 153–54, 57 L.Ed. 314 (1913) and *Boston & Main Railroad v. Piper,* 246 U.S. 439, 444, 38 S.Ct. 354, 355, 62 L.Ed. 820 (1918)), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984). The language of the waiver itself—on the face of the air waybill, no less—demonstrates that these requirements have been met, and T.B.I. has not contested the language or factual accuracy of the limitation provision.

 Instead of contesting the validity of the air waybill's limitation provision, Plaintiff claims that it is inapplicable on these facts because an actual conversion has occurred. (Pl. Reply Mem. at 8–9.) "Under federal common law, a declared value limitation of liability provision is [ ] enforceable against a claim for conversion" unless a plaintiff alleging conversion can "prove willful or intentional misconduct of the common carrier." *United States Gold,* at 1225–26. T.B.I. claims that Emery's acceptance of a check for more than eight thousand dollars payable to its order for shipping costs, in exchange for release of the goods, shows the requisite willful and intentional misconduct. (Pl. Reply Mem. at 10.) The Court does not agree.

917 F.2d at 707. Because it is uncontested that Emery's warehouse is not located on the premises of Kennedy Airport, Plaintiff's invocation of *Victoria Sales* seems well placed.

Defendant's cross-motion papers seeking to limit liability rely upon the provisions of the initial air waybill, not upon the Warsaw Convention. (Def.'s Mem. in Opp. to Pl.'s and Third–Party Defs.' Mot. for Summ.J., at 11–17.)

Presenting no other evidence of conversion, Plaintiff has not met its burden of proving willful or intentional misconduct. *See United States Gold,* at 1225–26. Accordingly, Plaintiff's conversion claim must fail. The liability limitation provision validly limits T.B.I.'s recovery, and partial summary judgment is hereby granted in defendant Emery's favor, limiting T.B.I.'s damages to twenty dollars per kilogram, or $21,700 on the basis of the weight listed on the face of the air waybill.

### D. Third–Party Defendant Classic's Rule 37(d) Motion for Sanction of Dismissal of Emery's Third–Party Complaint

■ Despite Emery's discussion in its papers of Classic's motion for summary judgment, Classic moves only pursuant to Fed. R.Civ.P.Rule 37(d) for sanctions against Emery for its failure to appear at a scheduled deposition, and its failure even to notify Classic of Emery's intention not to appear. Along with costs and attorney's fees, Classic seeks dismissal of the third-party Complaint as the appropriate sanction.

Counsel for Emery admits that it failed to appear at Classic's noticed deposition, and that such failure was "inadvertent." (Fearon Aff. in Opp. to Pl. and Third–Party Defs.' Mot. for Sanctions, ¶ 7.) The sanction of dismissal, however, is overly harsh for these circumstances, and accordingly will be denied.

While this inadvertence may not justify dismissal of the third-party Complaint as to Classic, it does justify imposition of Classic's costs and attorney's fees relating to the missed deposition and this motion for sanctions. Classic therefore is awarded its costs against counsel for Defendant, Stephen J. Fearon. Classic shall submit an appropriate affidavit documenting its costs and attorney's fees, along with an appropriate order. Further, Emery shall make itself available for deposition within 45 days of issuance of this Opinion and Order.

### E. Third–Party Defendant Lulla's Motion for Summary Judgment

■ The third-party Complaint charges Lulla with conversion of the shipment of ladies blouses, claiming that Lulla received the shipment and converted the same to his own use without ever obtaining title or the right to possess the goods. (Third–Party Compl. ¶ 20–22.) Third-party Defendant Lulla moves for summary judgment, arguing that Emery has no claim against him because he is not an officer, director, or shareholder of Take Away Styles, Ltd., and because even if he were, the corporate veil of New York corporations law would protect him. Lulla makes no other argument in support of his motion.

Emery responds by arguing for additional discovery, and in arguing against the imposition of sanctions (discussed below) refers to an affidavit filed in a tangential action in New York State Supreme Court where Lulla testifies that he was "an officer of Take Away Styles, Ltd. ('Take Away') and the principal of defendant Richway Company, Ltd. ('Richway') which is the sole shareholder of Take Away." (Fearon Aff. of 10/31/94, Ex. C (Aff. of Take Away Styles, Ltd. and Richway Company, Ltd. in Opp.Mot. for Order of Seizure), at 1.)

The third-party Complaint alleges that Lulla himself "received the shipment of ladies' blouses wrongfully and willfully converted the same to [his] own use." (Third–Party Compl. ¶ 21.) Accordingly, Emery seeks indemnity or contribution from Lulla. (Third–Party Compl. ¶ 23.) While it would appear that Emery included Lulla in this suit merely because Take Away and Richway were both in bankruptcy at the time of filing, Emery's third-party Complaint charges Lulla with receipt and conversion of the shipment.

Lulla does not contest that a conversion claim may exist against the recipient of the goods in question. Instead, Lulla's Local Rule 3(g) Statement sets out that the corporation Take Away Styles, Ltd., received the goods, delivered some of the goods to its customers, and retained some of the goods at the time it filed for Chapter 7 bankruptcy protection. (Lulla's 3(g) ¶¶ 5, 7, 8.) Further, Lulla claims not to have been involved in the transactions alleged in the Complaint and third-party Complaint and never to have possessed or converted the goods in question. (Lulla's 3(g) ¶¶ 13–15.) On this basis, Lulla

invokes New York corporations law for summary judgment.

Were piercing the corporate veil at issue here, then the prior Lulla affidavit would give this Court pause in considering Lulla's motion for summary judgment. However, Emery nowhere argues that it is attempting to reach Lulla by piercing the corporate veil, and so is accordingly precluded. Likewise, the other issue to be determined is whether a genuine issue of material fact exists as to whether Lulla personally possessed or converted the misdelivered goods. Here, Defendant's Rule 56(f) affidavit merely states that it "seeks to show that third-party defendants acted or omitted to act in such a way that lead [sic] to Emery's eventual release of the goods." (Def.'s Rule 56(f) ¶ 7.) This does not raise any issue as to who received the goods after their release. Yet, whether Take Away or Lulla received the goods is the only issue material to Emery's conversion claim against Lulla. Accordingly, Emery having failed to raise a material issue, Lulla's motion for summary judgment is granted.

### F. Third–Party Defendant Amro Bank's Motion for Summary Judgment and Sanctions

The third-party Complaint alleges that Amro and Classic caused the misdelivery through their "negligent, careless, reckless, wanton, wilful and wrongful acts and omissions," (Third–Party Compl. ¶ 16), and thereby owes indemnity and/or contribution to Emery, should Emery be found liable to Plaintiff T.B.I.

■ Third-party defendant Amro moves for summary judgment on the basis that it did not know of the goods' arrival in New York until the title documents were presented to it two weeks after Emery mistakenly released them to Mandeep Trucking without the proper bank release. Amro's Local Rule 3(g) Statement emphasizes that Emery was not a party to any of the documents involving Amro, including the Letter of Credit and the air waybill.

In response to Amro's factual recitation as to the timing of the presentation of documents, and its knowledge of the shipment of goods, Emery comes forward with its familiar refrain of a need for additional discovery. This claim is unavailing here for several reasons.

■ First, because the documents relating to this shipment of goods did not reach Amro until after Emery had released the goods, there is no possible claim of Emery's that can survive: Amro's commitment to pay on the letter of credit could in no way have arisen prior to presentation of the required documents of title. *Barclay Knitwear Co., Inc. v. King'swear Enterprises Ltd.,* 141 A.D.2d 241, 533 N.Y.S.2d 724, 726 (1st Dep't 1988). Further, Emery cites no law as to the existence of any duty to Emery that could conceivably exist between Amro and Emery on these facts. Finally, because the goods were in Emery's possession, if facts existed suggesting that Amro improperly told Emery to release the goods, Emery as the party acting on that instruction, would have the responsibility of coming forward with testimony or documents within its control supporting its claims. Emery has not done so, and thus confirms the facts set forth in Amro's papers, that Amro had no notice of the shipment until after Emery had released the goods.

Furthermore, Emery failed to pursue discovery with respect to Amro, and thus its sole defense—lack of sufficient discovery to respond—rings hollow. The Court directed expedited discovery, Emery dallied, and then failed to pursue the parties it sought to depose. In these circumstances, Amro's motion must be granted.

In responding to Amro's motion for sanctions, Emery relies upon a complaint filed by Amro against Take Away alleging fraud. Emery suggests that Amro breached a duty owed to Emery by failing either to inform Emery of Take Away's fraudulent activity or to act on that knowledge in a way that would have avoided the misdelivery at the heart of this action. Emery cites no law in support of this position, and has failed to show a dispute of fact sufficient to justify continuance of its action against Amro. The facts as stated in Amro's Local Rule 3(g) statement, undisputed but for a request for additional discovery, lead the Court to the inevitable conclusion

that Amro did not know of Emery's involvement until after Emery had breached its duty by releasing the goods. Accordingly, Amro's motion for summary judgment is hereby granted.

### G. Sanctions

#### 1. *Plaintiff's Motion for Sanctions*

 Counsel for Plaintiff argues for the imposition of sanctions claiming that Defendant has failed to plead a supportable defense and failed to provide a proper Local Rule 3(g) Statement. Following this motion, Defendant Emery asserted its defense based on the air waybill liability limitation for the first time since its Answer. In light of this meritorious partial defense, found to prevail and limit liability above, the imposition of sanctions would be inappropriate. Though counsel for Emery was recalcitrant, and was incapable of stating its now prevailing defense during the pre-motion conference on this matter, sanctions will not be imposed on this occasion.

#### 2. *Lulla's Motion for Sanctions*

 Counsel for Defendant explains in his affidavit in opposition to the imposition of sanctions, that suit against Lulla was based on the existence of Amro's state court fraud suit against Take Away and Richway, and on the basis of Lulla's affidavit in that action. Specifically, in an affidavit accompanying the state court action, Amro alleged that Lulla, as Take Away's ultimate shareholder and supplier, was operating a parallel enterprise to manipulate and divert inventory away from Take Away. (Fearon Aff. in Opp. to Sanctions, Ex. B, ¶ 17.) Despite the disingenuous conduct of Emery's counsel during the proceedings immediately prior to the filing of this motion with respect to stating its basis for this cause of action, the Court finds that the third-party Complaint's allegations against Lulla were not made without a reasonable inquiry into their factual basis. Further, Emery's stated cause of action against Lulla is not so frivolous as to justify the imposition of sanctions. Accordingly, Lulla's motion for sanctions is denied.

#### 3. *Amro's Motion for Sanctions*

 Amro moves for sanctions claiming a lack of any factual basis for the claims against Amro, and arguing that Emery unreasonably refused to dismiss voluntarily against Amro after receiving documentation demonstrating that Amro only acquired knowledge of the transaction specifics after Emery had released the goods. Emery responds that its original Complaint was well-founded on the basis of an investigation performed by an outside investigator retained by Emery; the investigation uncovered Amro's state court action against Lulla and others relating to Take Away. Emery also states that it "had no means of obtaining additional information regarding the Letter of Credit issued by [Amro]" until the Chu deposition on September 1, 1994.

In *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49–50 (2d Cir.1988), the Second Circuit affirmed the award of Rule 11 sanctions for a party's refusal to dismiss after it became apparent that its claims were meritless. Those same facts justify sanctions here for Amro's costs and attorney's fees in pursuing this motion for summary judgment. Though Emery cites the September 1 deposition of Chu in arguing against sanctions, that deposition coupled with letters and documentation from Amro provided Emery with sufficient information to recognize that its claim against Amro was meritless. Further, letters from Amro's counsel make clear that the lack of merit of the claims was brought to counsel's attention, and that Emery still refused to dismiss voluntarily. Accordingly, Amro's motion for sanctions will be granted to the extent of its costs and attorney's fees in moving for summary judgment. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d at 49–50; *see also Lane v. Sotheby Parke Bernet, Inc.*, 758 F.2d 71, 73 (2d Cir.1985) (per curiam) (remanding attorneys' fees application for determination of whether the action should have continued after completion of discovery). Amro shall submit an appropriate affidavit documenting its costs and attorney's fees, along with an appropriate order.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

(1) Plaintiff T.B.I.'s motion for summary judgment against Defendant Emery is hereby GRANTED, but limited to $20 per kilogram of the shipment;

(2) Defendant Emery's cross-motion for partial summary judgment limiting liability to $20 per kilogram is GRANTED;

(3) Third–Party Defendant Classic's motion for dismissal pursuant to Rule 37 is DENIED;

(4) Third–Party Defendant Lulla's motion for summary judgment is hereby GRANTED;

(5) Third–Party Defendant Amro's motion for summary judgment is hereby GRANTED; and,

(6) Plaintiff's and Lulla's motions for sanctions against Defendant and Third–Party Plaintiff Emery are hereby DENIED; Classic's motion for costs and attorney's fees related to the missed deposition and the present motion are GRANTED; Amro's motion for sanctions is GRANTED, to the extent of its costs and attorney's fees in pursuing this motion.

SO ORDERED.